## Wm. W. Glenn, Admr. *d. b. n.* of Frederick Lindenberger, *vs.* Samuel P. Smith, Admr. of George Hebb, and the Widow and Heirs at Law of George Hebb.

The provisions of the Constitution and laws providing for the removal, upon the abolition of the court of chancery, of *undisposed of* and *unfinished* cases from that court to the circuit court, apply to a case in which the *complainant*, who had filed a bill of revivor, *was dead*.

The Act of 1820, ch. 161, secs. 4 and 5, forbids the idea of *abatement*, and provides a mode by which a cause in chancery may be prosecuted, and a case which has not abated, is undisposed of and unfinished, and, when removed to a circuit court, must be carried on as if it had not been removed, and be regarded as a continuance of the same cause.

After a decree to account, which, in effect, calls on both parties to be active in the conduct of the cause, the defendant, who has in his possession all the materials by which an account could be taken, can take no advantage of the apparent *laches* of the complainant.

Where questions of *laches* and lapse of time arise in courts of equity, it is a sound maxim that each case is to be determined according to its own facts.

The plea of *plene administravit* will not protect an administrator, unless he has given the six months notice to creditors, required by the Act of 1798, ch. 101, and these six months are *calendar* and not *lunar* months.

A complainant, by his bill of revivor, after a decree for an account, may make the widow and heirs at law of the deceased defendant parties, and by an allegation of the insufficiency of personal assets to pay debts, give to his bill the attributes of a creditors' bill, under the Act of 1785, ch. 72, and obtain a decree for the sale of the real estate.

APPEAL from the Equity Side of the Circuit Court for Allegany county.

The history of the proceedings and facts of this case sufficiently appear from the argument of counsel, the opinion of this court, and the following opinion of the court below, (THOMAS DEVECMON, Special Judge,) delivered upon passing the decree appealed from:

"The first question presented for adjudication, is, whether this case is properly before this court, and whether it has jurisdiction?

Glenn, Admr. *d. b. n.* of Lindenberger, *vs.* Hobb's Admr., *et al.*

"The bill was originally filed in the high court of chancery of this State, and was so far proceeded in, that a decree to account was passed on the 17th of March 1842. There the case rested until June 12th, 1846, when the death of the original defendant was suggested. On May the 5th, 1849, a bill of revivor and supplement was filed, to which the defendants therein named filed their answers. On the 12th of December 1849, in consequence of the then chancellor (John Johnson) having been of counsel in the case, it was certified and referred to the Hon. Nicholas Brewer, one of the Associate Judges of Anne Arundel county court, in accordance with the Act of 1821, ch. 218. From that time forward, therefore, the case was undoubtedly before Judge Brewer, acting, however, *pro hac vice,* as chancellor, for the design of that law appears not to have been to change the *forum* from the high court of chancery to Anne Arundel county court, as a court of equity, but simply, in the particular case, to have a different person to act as chancellor. This is manifest from the language of the Act, which declares that it shall be certified to some judge of the third judicial circuit, which was composed of several counties. To what particular county, therefore, was it to be transferred? And again, the Act expressly declares that all orders and decrees passed by the judge to whom the case should be certified, should have the same effect as if passed by the regular chancellor. The conclusion, therefore, is, that although the case was certified to Judge Brewer, it still remained a case pending in the high court of chancery; the papers still remained in that court, and from that time forward Judge Brewer was the chancellor of that court, so far as this case was concerned.

"After the case had been thus certified to Judge Brewer, who became, according to what has been stated, *pro hac vice* the chancellor, an agreement for commission to take testimony, and for a reference to a special auditor, was filed in the case, on the 14th of February 1851. As that agreement was not signed by any one representing the infant defendants, it appears to have been deemed necessary to obtain the sanction of the chancellor, in order to bind them, and an order of

John Johnson, as chancellor, was obtained to that effect. As before remarked, his order can have no effect, as that of the chancellor, for he was not then chancellor in the case; and although the Court of Appeals, in *Buckingham vs. Davis*, 9 *Md. Rep.*, 324, have said, that under the present Constitution, a disqualified judge is not necessarily prohibited from authorizing mere matters of form, tending only to prepare the case for trial, and that in the absence of *all objection*, he may act in such instances, I do not regard that as applying to this case, for the language of the Act of 1821 is very different from that of the new Constitution, and evidently contemplates that all interlocutory and other orders, as well as the final decree, should be passed by the judge to whom the case had been certified. Here the infants could give no consent, and could make no objections. Under these circumstances, I do not think they are in any manner bound by the audit filed in the case; but how far it is binding upon the adult defendants, under the agreement, is a very different question, which it is not necessary now to decide.

"An audit having been filed in the case, and also objections to its ratification, before any order was passed reviving the case against the defendants, it again abated by the death of the complainant, which was suggested on the 8th of March 1854. Now the court of chancery expired on the 10th of March 1854, and various Acts of the Legislature were passed providing for the removal to the several counties of the cases then pending in that court, and undisposed of. This particular case appears to have been transmitted to this court under the provisions of the Act of 1854, ch. 149, sec. 3, and it was properly so transmitted. I cannot agree in the argument of the defendant's counsel, that because the case was abated, it was not still pending in such a sense as to come within the purview of the Constitution and laws provided for its removal; although such might be the effect of abatement in a court of law, yet in a court of equity the suit is not considered at an end, but is merely in a state of suspended animation. *Story's Eq. Pl., sec.* 354. I therefore

decide that this case was properly removed, and that this court has jurisdiction over it.

"The next question that arises is, as to the right of revivor against the several defendants.

"It is sought to revive the suit against the widow and heirs of the original defendant, as well as against his administrator; and it may be that the complainant would have a right to revive against some of the defendants, and not against the others.

"The bill was filed for an account, and to enforce the payment of a debt alleged to be due by the original defendant to the complainant. Now what interest has the widow of George Hebb in this suit, to entitle the complainant to any relief against her? As respects the right of dower in the real estate of her deceased husband, it is clearly protected from all liability for the claim of the complainant, even if he establishes such claim. And as respects his personal estate, she has clearly no legal or equitable interest in it, by which she could in any manner be made a party, even if the complainant sought some specific relief against that personal estate *in specie*. It is true, it is alleged and admitted that she received from the administrator of her husband the distributive share of his personal estate, as declared by him on the settlement of his accounts in the orphans court; but still *the complainant* cannot follow that into her hands. His only remedy, as respects that personal estate, is against the administrator, and conceding that in case the administrator was held liable for the full amount of the personal estate that came to his hands, that he might have recourse over upon those to whom he had improvidently paid it, (which, however, I do not decide,) still I cannot conceive how, under any circumstances, this suit can be revived by *the complainant* against her.

"It is also sought to revive the suit against the children and heirs of George Hebb. From what has been said, it is apparent that, as respects the personal estate, no right of revivor exists against them, for the reasons before assigned. And as respects the real estate, as that is only liable secondarily for the payment of debts, the right of revivor against these heirs

must depend upon the right of the complainant to revive against the administrator of the personal estate, and the right of the complainant to ultimate relief against them, must also depend upon the fact hereafter to be ascertained, whether the personal estate was sufficient for the payment of the debts of the deceased. I therefore proceed to the consideration of the right of revivor against Samuel P. Smith, as administrator.

"The first defence here interposed, is *plene administravit.* It appears that the orphans court, in granting the letters of administration, on June the 10th, 1846, passed an order directing the administrator 'to give the usual notice required by law to the creditors of the deceased,' and it is shown by the testimony in the case, that a notice was thereupon published, 'warning the creditors to exhibit their claims to the administrator on or before the 10th of December 1846,' and that the notice in the one newspaper was first published on the 16th of June 1846, and in the other on the 19th of June 1846, and that this notice was published in the only two newspapers printed in the county, for three successive weeks. Is this such a compliance with our Acts of Assembly as to relieve the administrator from future liability to creditors, who may not have presented their claims in compliance with the notice thus published? I do not think it is. The Court of Appeals have said, in *Steuart vs. Curr,* 6 *Gill,* 440, that the administrator must show affirmatively that he gave the notice to creditors, required of him by our Acts of Assembly, in order to exempt him from further liability. Now what do those Acts require? The 13th section of the 8th sub-chapter of the Act of 1798, ch. 101, requires the administrator, in order to exempt himself from future liability, to cause to be inserted in such and so many newspapers as the orphans court may direct, at least six months *before he shall make distribution,* an advertisement in the form substantially proved to have been inserted in this case. The notice inserted in this case, is proved to have been published in all the newspapers that were at that time printed in the county, and although the law requires the orphans court to direct the number of newspapers in which the publication shall appear, still, as it was

published in all the newspapers printed in the county, I should regard it as a substantial and even literal compliance with its requirements. But it is insisted, by the complainant's counsel, that this notice was not published for six months previous to the 10th of December 1846, which is the time named in the notice for the presentation of claims against the intestate. The solution of this depends upon whether the word '*month*,' in this section of the statute, is to be construed a *lunar* or *calendar* month. The general rule of the common law undoubtedly is, that where the word month is used in a statute, it is to be construed a *lunar* and not a *calendar* month. This rule has not only been recognized by the judiciary, but also by the Legislature of Maryland; for the Act of 1779, ch. 10, was passed in order to declare that the word 'months,' as used in the statutes for the registration of deeds, should be construed to mean calendar and not lunar months. And the very next section of the Act of 1798, ch. 101, already quoted, (viz., the 14th section of sub ch. 8,) when declaring the time within which an administrator shall take his account, uses the words, within 'thirteen *calendar* months.' I cannot, therefore, resist the conclusion that the word 'month,' used in the preceding section of the same law, is to be construed, in accordance with the rule of the common law, as a lunar and not as a calendar month. But again, the statute only requires the notice to be published 'at least six months before the administrator shall make distribution.' Now, in this case, the distribution was not made until May 31st, 1848. Therefore the publication, as shown by the proof, was made nearly two years before the distribution; and it is, therefore, immaterial whether the word 'month' be construed to mean a lunar or calendar month. Whilst, therefore, I should regard the notice given in this case as a substantial compliance with the Act before mentioned, I find that the subsequent Act of 1826, ch. 178, (which, as I construe it, would embrace a case of this kind,) requires the court not only to direct the place in which the notice shall be published, and the number of papers in which it shall be inserted, but also *the number of insertions in each paper*. Here the order

34     v.17

of the orphans court did not fix the number of insertions, nor how long the notice was to be published; and as the Court of Appeals have determined, in 7 *Md. Rep.*, 30, that a notice published without the previous authority of the orphans court, is, in law, no notice at all, it necessarily follows that a notice given under an order of the orphans court, which does not fix the length of time for which it is to be published, cannot avail to protect the administrator, or be regarded as a compliance with the law. For these reasons the plea of *plene administravit*, here interposed, does not bar the right of revivor.

"But the administrator also sets up, in his answer, the defence of the statute of limitations and lapse of time, against the right of the complainant to revive in this case. In *McKnight vs. Taylor*, 1 *How.*, 168, the Supreme Court say, 'that it is not merely in analogy to the statute of limitations, that a court of chancery refuses to lend its aid to stale demands. There must be conscience, good faith, and reasonable diligence, to call into action the powers of the court. In matters of account, where they are not barred by limitations, courts of equity refuse to interfere, after a considerable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice, when the original transactions have become obscure by time, and the evidence may be lost. The rule upon this subject must be considered as settled, that nothing can call a court of chancery into activity but conscience, good faith, and reasonable diligence, and where these are wanting, the court is passive and does nothing.' The same doctrine is also announced in the subsequent case of *Bowman, et al., vs. Wathen, et al.*, reported in the same book, at *page* 189. Two cases have been cited by the counsel of complainant, to show that this defence is not available to a decree for account. *Child vs. Frederick*, 1 *Peere Wms.*, 266, and *Hollingshead's case, Ibid.*, 743. But these two cases were subsequently reviewed in England, in the case of *Hercy vs. Dinwooddy*, 2 *Ves.*, 87, and also 4 *Brown's Ch. Rep.*, 258, in which the master of 'the rolls reviews all the authorities, and comes to the conclusion that there is no absolutely fixed rule upon the subject, but that every case must depend upon its

own special circumstances. In that case the court refused to revive the decree for account, upon the ground of the great length of time that had elapsed, (over thirty years,) and also upon the ground that the party seeking to revive, had suffered the estate to be distributed without taking any steps to bring the representatives of the deceased party before the court; and in one of the cases cited by the master of the rolls, in delivering his opinion, the case is put of an executor paying, in discharge of debts, money that he had received under a decree, which was subsequently reversed; in such case the executor must refund; but it would be otherwise, if the defendant had delayed the appeal, and willingly stood by while the executor paid away the money, as that would be drawing the executor into a snare. Here the decree to account was passed on the 17th of March 1842, and nothing was done under it in the lifetime of George Hebb, whose death was suggested in the case on the 12th of June 1846. During this interval, however, no *laches* could be imputed to the complainant, because under the decree to account, both parties were actors, and the defendant himself might have had the account stated. But from the time when the death of Hebb was suggested, up to the time of filing the bill of revivor, which was May the 5th, 1849, the complainant is surely justly chargeable with negligence. As the death was suggested upon the docket in June 1846, this was sufficient to put the complainant upon inquiry, and he is therefore to be treated, in a court of equity, as having notice of the granting of letters of administration on Hebb's estate, 11 *G. & J.*, 243, 3 *Md. Ch. Dec.*, 493 and 543. He also knew (for every one is presumed to know the law) that it was the duty of the administrator, within a limited time, to make a distribution of the estate, and to fully administer all the assets which came to his hands, and he was bound to presume that this duty, enjoined by law upon the administrator, was being performed by him. Under these circumstances, therefore, the case seems to come directly within the principle announced in the cases which I have cited, and the complainant has not exercised that 'reasonable diligence' to entitle him to call this court into activity. In the case of

*Steuart vs. Carr, et al.*, 6 *Gill*, 440, there was a delay of five years in filing the bill of revivor; but this delay was satis-factorily accounted for by the loss of the original papers in the case, and it appeared that the bill of revivor was filed im-mediately after the papers were found. But here the delay is not accounted for, and no facts are stated to excuse it. In *Watson vs. Wilson*, 2 *Dana*, 406, the Court of Appeals of Kentucky refused to revive a suit where there had been a delay of *only two* years, upon the ground that new and inno-cent parties were to be affected. And our own Court of Ap-peals, in the case of *Clabaugh vs. Byerly*, 7 *Gill*, 354, held, that where a mortgagee knew of the existence of a prior mortgage in September 1842, but made no complaint until February 1844, he, by this delay, lost any equity which he otherwise might have had. See, also, upon this subject of *laches*, 8 *Md. Rep.*, 387; 4 *Md. Rep.*, 124; 1 *Md. Ch, Dec.*, 20. Another fact which it is proper to advert to, and which is proved in the case, is the loss, since the decree to account, of some of the books, which might be necessary in stating it. These books appear to have been filed in the court of chancery shortly after the decree was passed, and some of them have been lost. As the account here sought is of mat-ters from the year 1817, down, it may be that these lost books are important, and as, according to the proof, no blame can be attached to the defendants or their counsel, the loss of these books, in the language of some of the authorities, fur-nishes an additional reason why the case should not now be revived.

"I shall, therefore, pass a decree dismissing the bill of re-vivor and supplement, but will not allow the defendants for costs, as this seems to be the rule in cases of this kind. 2 *Ves.*, 93; and 3 *Johns. Ch, Rep.*, 147.

"It is thereupon, this 2nd day of December 1859, ordered and adjudged that the bill of revivor and supplement filed in this case, be and the same are hereby dismissed."

The cause was argued before LE GRAND, C. J., TUCK, BARTOL and GOLDSBOROUGH, J,

Glenn, Admr. *d. b. n.* of Lindenberger *vs.* Hebb's Admr., *et al.*

*J. H. Gordon* and *R. H. Alvey*, for the appellant:

1st. The first objection of the appellees is, that the case was improperly removed from the court of chancery, and that the circuit court of Allegany county had no jurisdiction of it. Under the Cons., Art. 4, sec. 23, and sec. 8, and the Acts of 1852, ch. 16, sec. 1 and 1854, ch. 149, provision was evidently intended to be made against all the inconveniences that could arise from the abolition of the court of chancery; to substitute the circuit courts for it, and impose upon them all the powers and duties which formerly belonged to it, and to provide a mode for bringing *cases* and *proceedings* in that court *undisposed of* and *unfinished*, into such courts for the purposes of completing what was left unfinished by the court of chancery. These provisions have been strictly complied with in this case. There can be no doubt that this was a case pending, unfinished and undisposed of in the court of chancery, when that court terminated. An abatement of a case in equity does not *terminate* or overthrow it, but merely *suspends* it till some further action is taken by the proper parties to revive it—to put it in motion again. *Story's Eq. Pl., sec.* 354; see, also, 8 *Md. Rep.*, 322, *Brown vs. Gilmor;* 11 *Md. Rep.*, 74, *Dugan vs. Rollins.* The jurisdiction of the court below was therefore complete.

2nd. Was the case *regularly* revived? Upon a proper bill of revivor such as this is, the only question is whether the *proper parties have been made*, and when such parties do not plead or demur, but *answer* such a bill, as they have done here, they *waive* all irregularities and objections to the mode of revival. If this position is correct, then all other questions, as to *laches*, lapse of time, limitations, *plene administravit*, &c., are out of the question. And that it is correct, see 1 *Russ. & Mylne*, 28, *Wagstaff vs. Bryan. Story's Eq. Pl., sec.* 354, *a.* Adams *Eq.*, 407. 2 *Simons* 465, *Lewis vs. Bridgman.* 11 *Price*, 117, *Nanny vs. Totty.* 5 *Simons* 286, *Codrington vs. Houlditch.* 3 *Peere Wms.*, 348, *Harris vs. Pollard. Story's Eq. Pl.*, secs. 374, 387, 829.

3rd. But if other objections or defences can be considered

in this case, the first question is, whether *limitations, lapse of time,* or *laches* will defeat the revival as to the administrator of George Hebb?

These defences, to be available, can only apply to the proceedings subsequent to the decree for account, on the 17th of March 1842, which was passed in accordance with the decision of the Court of Appeals in 1841, in 12 *G. & J.*, 271, where that court decided that the defence of *laches* or lapse of time, could not be made under the circumstances of this case. George Hebb lived until the 17th of May 1846, the case standing, meanwhile, under the decree to account, by which *both parties* became actors, and Hebb, having all the materials out of which the account was to be stated, was more especially required to proceed with it. He could not, therefore, complain of *laches* on the part of the complainant. We must, therefore, ascertain whether these defences can be interposed under the circumstances which have occurred since his death? Administration upon his estate was granted to Smith on the 9th of June 1846, and the *first bill* of revivor was filed on the 5th of May 1849, less than three years after the death of Hebb. Now, unless Smith is protected by his plea of *plene administravit,* (as we shall hereafter show he is not,) is there any defence which he could interpose to the revivor? If Hebb had lived till the 5th of May 1849, and the case had remained, as it did, until that time, he could not, as we have shown, set up limitations, want of diligence or lapse of time, as a bar to further proceedings by John Glenn, the original complainant, and if Hebb could not have taken advantage of these defences, how can his representatives occupy a better position than he himself did? Was there such negligence and unreasonable delay from the death of Hebb, till the filing of this first bill of revivor, in May 1849, as will justify a court of equity in refusing relief? we insist there was not. It will hardly be contended that the *statute of limitations,* as such, is a bar here. Where there has been *no decree* the statute may be pleaded to a bill of revivor, if not filed within the statutory period. (*Story's Eq. Pl., sec.* 831. *Mitford's Eq. Pl.,* 273.) But the same authorities

show that *after a decree*, which is in the nature of a judgment, the statute of limitations, as such, cannot be applied. After a decree to account, both parties become actors, and either party may revive if the other neglects to do so, (*Mitford's Eq. Pl.*, 79; *Story's Eq. Pl. sec.* 372,) and it has been decided that limitations cannot be pleaded in bar to a bill of revivor after a decree to account. 1 *Ball & Beatty*, 531, *Egremont vs. Hamilton.* 1 *Peere Wms.*, 744, *Hollingshead's case.* It is true that great lapse of time, and *laches*, have, in some cases, been held to be a bar to the relief asked by such a bill, *(Mitford's Eq. Pl.*, 273,) but no *general rule* has been laid down upon the subject, and each case must depend upon its own peculiar circumstances. The two cases mostly relied on by the other side, (4 *Brown's Ch. Rep.*, 270, *Hercy vs. Dinwooddy*, and same case in 2 *Ves.*, 87, and 2 *Sch. & Lef.*, 607, *Hovenden vs. Lord Annesley*,) lay down no general rule, but there the parties had slept upon their rights, in the one case for *thirty-four*, and in the other for *sixty eight years*, without taking any steps whatever to proceed in the cause or to assert their claims, and in the former case the Master of the Rolls, after reviewing all the previous decisions says: "Upon these cases the question is, whether I am bound by *any rule that has been laid* down? certainly not. Every case *depends upon its particular circumstances.*" Here we proceeded to file the bill of revivor, in less than *three* years after its abatement by the death of George Hebb, and that too in a case in which the defendant, and his representatives, had the right to revive, and in which it was as much their business to press the case forward as that of the complainant, and in which they had possession of all the *books, accounts*, and materials necessary and requisite for the statement of the account, and in which they, if the account had so turned out, could have obtained a decree against the complainant.

Since the filing of the first bill of revivor the record shows, that the answers thereto of the administrator, widow and heirs, were not all filed till the 10th of July 1850. From that time till the death of John Glenn, on the 8th of July

1853, the case was conducted by both parties with a view to the final hearing by the chancellor on the merits, at the same time that the questions upon the bill of revivor were heard; they agreed for a commission on the 25th of October 1850; they agreed to refer the case to a special auditor on the 14th of February 1851; the audit was returned on the 6th of December 1852, and exceptions to it filed on the 4th of January 1853; the Act for removal of papers was passed on the 10th of March 1854; the papers were removed on the 11th of December 1854, and the second bill of revivor filed on the 18th of April 1855. It is submitted, therefore, that no delay of proceeding existed at any time, of sufficient length to let in the bar of the statute of limitations, or the equitable bar of the lapse of time, so as to justify a court of equity in refusing relief on that ground; that it was not a case in which the complainants are chargeable with such unreasonable delay as will defeat their claim. In addition to cases already cited on this point, see 1 *Johns. Ch. Rep.*, 313, Arden *vs.* Arden. 10 *Wheat.*, 152, Elmendorf *vs.* Taylor. 1 *Sch. & Lef.*, 413, Bond *vs.* Hopkins. 1 *Mylne & Craig*, 118, Perry *vs.* Jenkins. 2 *Gill*, 163, Bell *vs.* Webb. 6 *Gill*, 440, Steuart *vs.* Carr. 12 *Md. Rep.*, 418, Hanson, *et al.*, *vs.* Worthington. *Adams Eq.*, 863.

But there is another ground on which this defence cannot be availed of. George Hebb was a trustee, under the agreement of 1821, which placed the assets in his hands, as stated in his answer, (12 *G. & J.*, 271,) and there is no case in which a trustee, or his representatives, under a direct trust, have been protected from an account of the trust fund by a lapse of time less than twenty years after the trust was ended. *Hill on Trustees*, 169, 264, *note* 2.

4th. The plea of *plene administravit*, is no defence for the administrator. He did not pay away the assets without notice of this claim. He was bound to take notice of the pendency of this suit. The Act of 1820, ch. 161, sec. 5, *required* him to come in and make himself a party to the cause; the court in which this cause was pending was a court of record, and he was bound to take notice of its proceedings, and of suits

there pending against his intestate.   6 *Gill*, 440, *Steuart vs. Carr.*   But again, he did not conduct the administration in accordance with the requirements of the testamentary law. He did not give the proper *notice to creditors;* the order of the orphans court directing the notice does not designate the newspapers nor the number of newspapers in which the advertisement should be inserted.   The notice was first inserted in the paper on the 16th of June 1846, giving notice to creditors to file their claims on or before the 10th of December 1846, which is less than six *calendar* months, and is, therefore, insufficient.   In *Rawlings vs. Adams*, 7 *Md. Rep.*, 26, a similar notice was held insufficient for a similar reason, and this decision is conclusive upon the question that the six months, mentioned in the Act of 1798, ch. 101, mean *calendar* and not *lunar* months.   Such has always been the established usage and practice under the statute, and this would, of itself, control its construction in this respect.   See, also, 1 *Rob. Prac.*, 414.   The right of revivor against the administrator is therefore established.

5th.  The right of revivor against the administrator being established, the right of revivor against the widow and heirs at law seems necessarily to follow: 1st. Because they are distributees to whom a portion of the assets have been paid over.   12 *Md. Rep.*, 418, *Hanson, et al., vs. Worthington, et al.*   And 2nd. Because the supplementary part of the bill of revivor *makes it a creditors bill* for the sale of the real estate, to which they are necessary parties.   1 *Bland*, 409, *Owings' case.*   3 *Md. Ch. Dec.*, 306, *O'Hara vs. Shepherd.*

*Geo. A. Pearre* and *Thos. S. Alexander*, for the appellees:

1st.  At the time of the removal of the papers and proceedings from the court of chancery to the circuit court for Allegany county, the cause had become abated and ended, and was not depending or unfinished, within the provisions of the Constitution, Art. 4, sec. 23, or the Acts of Assembly passed in pursuance thereof.

These provisions of the Constitution and laws only authorise the removal of *pending* causes *unfinished* and *undis-*

35    v.17

*posed of*, and the Legislature did not give to the keeper of the records the power to determine what cases came within that description.    The burden is therefore on the other side to show, that the case was properly removed to the circuit court for Allegany county—the case died with the chancery court, unless they can show that it was a case that could be removed.    Was it such a case? a case pending, undisposed of, and unfinished?    It had *abated* by the death of the complainant, and was not revived prior to the abolition of the court of chancery.    An *abated* cause cannot be considered a *pending* cause, *undisposed of* and *unfinished.*

2nd.  More than three years intervened between the time of the death of George Hebb, the original defendant, and the time of *service of process* of the bill of revivor, upon the present defendants, and by such lapse of time the right of the original complainant to revive the suit, was barred.

Geo. Hebb died in May 1846, and the *subpœnas* on the bill of revivor were not served till July 1849, a period of more than three years.  A bill filed and *subpœna served* make a *lis pendens;* the *lis pendens* begins from the service of the *subpœna*, after the bill is filed.  1 *Vernon*, 318.  1 *Johns. Ch. Rep.*, 576, *Murray vs. Ballou. Story's Eq. Pl.*, sec. 737.  17 *How.*, 424, *Herndon vs. Ridgway.*  3 *Sugden's Vendors*, 322.  Three years, therefore, had elapsed between the death of of Hebb and the *lis pendens* by the bill of revivor.

. It is not the practice in Maryland to follow the strict rules of *English practice;* limitations, lapse of time, *laches*, may be relied on by *answer* as well as by plea or demurrer; indeed, our practice is to make such defences by *answer* alone.  12 *G. & J.*, 271, *Glenn vs. Hebb.*

Now the right of one partner to sue his co-partner, for an account, ordinarily is barred by a limitation of three years from the dissolution of the partnership.  18 *Ves.*, 286, *Barber vs. Barber.*  4 *Russell*, 430, *Ault vs. Goodrich. Gilb. Eq. Rep., Bridges vs. Mitchell*  These cases show that limitations would have applied to the original claim.  But the plea having then been *waived* is it applicable to the bill of revivor?

All the authorities say it may be so applied. *Mitford's Eq. Pl.*, 273. *Story's Eq. Pl.*, sec. 831. In *Hollingshead's case*, 1 *Peere Wms.*, 744, Lord Chancellor Macclesfield says: "The statute of limitations speaks nothing of bills in equity, yet these are construed to be within it. The case of not reviving a *decree which is only to account*, is within all the mischief designed to be prevented, viz: to sue a man after his vouchers may have been lost, or his witnesses dead. For if the party may delay six years before he revives his bill, he may, by the same reason, forbear twenty-six, thirty-six or forty-six years."

From the 29th of December 1842, shortly after the decree to account was passed, John Glenn took no steps in the case, up to the death of Hebb, in May 1846, a period of nearly four years, and even after the death of Hebb no step was taken until May 5th, 1849, when he filed the original bill of revivor. The case thus lay dormant for nearly seven years under reference to the auditor, and during this interval, the original defendant died, and his estate was fully administered and settled up in the orphan's court. Besides, it must be remembered that, the circumstances surrounding the case are peculiar. The bill seeks an account of partnership affairs commenced in 1815 and ended in 1825; that some of the books of the firm were burnt in 1833; that those which escaped were placed in court where the complainant could use them, on the 29th of September 1842, and yet he does not move for seven years, and then only against an administrator who has closed his accounts, and against a widow and infant children, who could possibly know nothing about the business.

There is no fixed rule as to *laches* and lapse of time: each case depends on its own circumstances. 9 *Pick.*, 242, *Farnam vs. Brooks.* Though lapse of time after a decree to account is not a statutory bar, yet is a defence more favorable than limitations, and is applied by the courts after a decree to account, 4 *Brown's Ch. Rep.*, 267, *Hercy vs. Dinwooddy*, and same case in 2 *Ves., Jr.*, 87. The reason for this principle is, that after a decree to account it is the duty of the party asking for the account to proceed in a reasonable time.

2 *Ves., Jr.,* 90, 92. 1 *How.,* 193, *Bowman vs. Wathen.*
2 *Sch. & Lef.,* 638, *Hovenden vs. Lord Annesley.* Another
reason for the application of this principle is, the danger of
doing injustice—a consideration of public policy. *Angell on
Lim.. chap.* 16, *sec.* 11. 2 *Ves., Jr.,* 14, *(Sumner's Ed.,)
Jones vs. Turberville,* and *note* 1. 4 *Ves.,* 627, *Pearson vs.
Belchier.* And special danger of injustice is to be apprehend-
ed in decreeing an account, after a great lapse of time, against
executors and legatees. 2 *Ves., Jr.,* 92. 1 *Johns. Ch. Rep.,*
47, *Ellison vs. Moffatt.*

Now what is reasonable diligence which destroys the de-
fence of lapse of time? In 4 *Md. Rep.,* 124, *Mason vs.
Martin, et al., laches* and acquiescence were imputed after
two years, in a case where trustees for sale purchased the pro-
perty sold—a state of case allowed by a court of equity. In
*Clabaugh, et al., vs. Byerly,* 7 *Gill,* 354, it was held that a
party having knowledge and not acting for seventeen months,
loses an equity if he has it; and in that case no rights had
changed, no intermediate parties, no *bona fide* purchasers
without notice. See also 7 *Richardson's Eq. Rep.,* 260,
*White vs. Bennett.* 1 *Md. Ch. Dec.,* 24, *Barry vs. Barry.*
12 *Texas,* 487, *Houston vs. Jennings.* 16 *Ala.,* 509, *Hodges
vs. Wise, et al.* 2 *White & Tudor's Lead. Cases in Eq.,*
160, *(Ed. of* 1851.)

3rd. The defendant, Smith, is protected by the plea of
*plene administravit,* and the omission of Glenn to file his bill
of revivor in proper time.

The principles and decisions we have already cited under
the previous point are peculiarly applicable to testamentary
cases. But here there was positive acquiescence by John
Glenn in the administration of George Hebb's personal es-
tate. The suggestion of Hebb's death on the record on
the 12th of June 1846, was made by Glenn himself, or if
not, this entry on the record, of which he was bound to take
notice, gave him notice of his death, and, consequently, that
his estate would be administered upon. 3 *Md. Ch. Dec.,*
13, *Ducker vs. Belt.* 9 *Gill,* 263, *Newcomer vs. Keedy.*
Administration upon Hebb's estate was granted *before* his
death was suggested on the record, and this suggestion of

his death was sufficient to put Glenn on inquiry, and is, in equity, notice of administration granted. 11 *G. & J.*, 243, *Magruder vs. Peter.* 3 *Md. Ch. Dec.*, 493, *Ringgold vs. Bryan.* Ibid., 543, *Stockett vs. Taylor.* The complainant will not be permitted to hold the administrator responsible in *a court of equity*, even should the notice to creditors have not been in strict conformity to the statute. The object of the law is notice to creditors, and if the creditor has equitable notice or constructive notice, in a court of equity, his conscience is bound. Where a right exists in strict law which it would be unconscionable to exercise, equity would grant relief against proceedings at law. After Glenn had this notice of the death and administration, he kept quiet for a period almost three times as long as that in which the law contemplates an administrator shall wind up the estate, and the death of all parties who could give any account of the transactions is a strong circumstance against the proposed revivor. 1 *John's Ch. Rep.*, 46. The bill of revivor filed by Glenn gives no excuse for his *laches.* He does not pretend he did not know of the administration, but impliedly concedes a knowledge by showing that he rested quiet under the supposition, that the administrator was bound to notice his claim as a pending suit. In the cases of *Rawlings vs. Adams*, 7 *Md. Rep.*, 24, and *Steuart vs. Carr*, 6 *Gill*, 440, there was no notice or knowledge of administration shown, active or constructive, and in the latter case $15,000 of legacies were paid after *subpœna* on the bill of revivor was served. No question arose in either of those cases as to the effect of notice or knowledge on the part of the creditor as a substitute for the usual published notice. To permit a creditor, with notice of administration, to stand by and let the estate be settled up, and then demand his debt from the administrator, by taking advantage of a mere error of the orphan's court, or an informality in the administrator's notice, is a fraud—it is *mala fides*, fraud in fact and law; fraud is the true ground on which the courts go in case of notice. 2 *White & Tudor's Lead. Cases in Eq.*, 31, 33, *(margin.)*

But the notice to the creditors given by the administrator,

from the 16th of June to the 10th of December, was a compliance with the Act of 1798, ch. 101, and sufficient to protect his payments. The computation of time is always by *lunar* months, unless there is some express provision that it is to be by *calendar* months; when a statute speaks of months it means *lunar* months; *lunar* months are always intended in law unless otherwise expressed. 2 *Bl. Com.*, 141. 6 *Term Rep.*, 224, *Lacon vs. Hooper.* 3 *Johns. Ch. Rep.*, 74, *Stackhouse vs. Halsey.* Whenever, in our legislation, *calendar* months are intended, it has been so expressly declared. The Act of 1779, ch. 10, declares months used in registry laws to be calendar months. And in this very Act of 1798, ch. 101, whenever calendar months are intended it is so declared; sub-ch. 8, sec. 1, speaks of calendar months, and so does sec. 14, but the immediately preceding section, 13, in which provision is made for notice to creditors, the words are "six months," simply. Not only for the reasons already stated should these words be construed to mean *lunar* months, but also because the clause in which they are found is a clause of *penalty.* The case of *Rawlings vs. Adams,* 7 *Md. Rep.*, 26, is not a decision which ought to preclude us on this point; for the question of computation by lunar months was not raised in argument, nor alluded to by the court in its decision. But it is immaterial in this case whether the law be construed to intend calendar or lunar months, as *nearly two years intervened from the time the notice was given to the time of the distribution.*

But there is another and fatal objection to this bill of revivor. By sec. 15, sub-ch. 8, of the Act of 1789, ch. 101, the administrator who had notice of a claim, was bound for it although the claim was not exhibited to him. To relieve the administrator from responsibility in such case, the Act of 1823, ch. 131, sec. 2, was passed, placing a claim not exhibited, in the same position as if unknown. This imposes an *active positive* duty on the creditor. Now, by sec. 18, sub-ch. 8, of the Act of 1798, ch. 101, when an administrator *disputes* a claim, the claimant must commence a suit for its recovery in *nine months* after it is disputed. Here suit was

brought in the lifetime of Hebb, and was *disputed by him.* Now, by *analogy* to the above provision, was not John Glenn bound to *file a bill of revivor in nine months?* Is not this a case in which a court of equity, upon the principle of analogy, will, by construction, apply express statutory restrictions in regard to time, to cases of similar character, where no such express legislative provisions exist? The courts of this State have frequently done so, and in the case of *Edwards vs. Bruce,* 8 *Md. Rep.,* 387, all the cases are cited, and the principle applied, in a case much less strong than the present, and was held to be peculiarly appropriate in reference to testamentary affairs.

4th. This is not a creditors bill, under the Act of 1785, ch. 72, as such a bill is commenced after the death of the debtor, and such bills must state that they are filed on behalf of the complainant, and of all other creditors of the deceased. 2 *Bland,* 315, *Hammond vs. Hammond.* The suit cannot, therefore, be revived against the heirs at law of George Hebb, *as such,* nor against his widow, so as to affect her dower interest in the real estate. The original bill was to establish a money demand against a surviving partner. It sought no specific property, as a case for specific performance of a contract between vendor and vendee, or to foreclose a mortgage. The revivor can only bring in parties necessary to enable the complainant to proceed with his original bill, and the administrator only is such party.

GOLDSBOROUGH, J., delivered the opinion of this court.

This case had its origin in a suit instituted in the court of chancery, in 1837, by John Glenn, administrator of Frederick Lindenberger, against George Hebb.

The complainant, by his bill of complaint, prayed the court to pass a decree that the defendant account with the complainant for the partnership effects of the late firm of Hebb & Lindenberger, in his hands, as surviving partner of the firm. After sundry proceedings were had to bring the cause to hearing, all of which are stated in the record in this case, the chancellor, by his decree, dismissed the bill. An appeal

was taken, and this court, at December session 1841, reversed the decree of the chancellor.   See 12 *G. & J.,* 271.

The chancellor, in view of the decision of this court, passed a decree that the defendant account with the complainant. The cause was proceeded with, being referred to the auditor to state the account. It continued thus pending until the defendant, Hebb, died, on the 17th day of May 1846. On the 9th of June 1846, letters of administration on the personal estate of Hebb, were granted to Samuel P. Smith, and on the 12th of June, of the same year, the death of Hebb was suggested.

The complainant filed his bill of revivor and supplement on the 5th of May 1849, against the administrator, and also against the widow and heirs at law of Hebb, stating, as supplemental matter, that Smith, the administrator, had settled his account with the orphans court, and distributed the personal assets to the widow, and heirs at law of Hebb, who are infants, regardless of the pendency of the chancery suit; that Smith was also the guardian of the said infant children, and that the assets are either in the hands of Smith, as administrator, or in the hands of the widow and Smith, as guardian, and, in either case, liable to the payment of the complainant's claim, when it shall be ascertained.

It further alleges that the personal estate of George Hebb is not sufficient to pay the debt, and that Hebb died seized and possessed of a large amount of real estate. The bill then prays for a revivor, that a decree to account may be carried into effect, and that the real estate may be sold, for the payment of the debts.

The answers of the defendants were filed, and, by agreement, the cause was referred to a special auditor, who filed his audit on the 6th of December 1852. Exceptions to the auditor's report were filed by the defendants in January 1853, and on the 8th of July 1853, the complainant died.

No further proceedings were had in the court of chancery, the office of chancellor being abolished by the Constitution, and, by its provisions, the Legislature was required to pass all laws requisite to dispose of cases and proceedings in the

chancery court then undisposed of and unfinished, and that the same be transmitted to the several counties, in such manner and under such regulations as may be deemed necessary and proper.

The bill of revivor and supplement was removed to the circuit court for Allegany county, which court took cognizance of the same, and the present bill of revivor was filed by the appellant, as administrator *de bonis non* of Frederick Lindenberger, on the 18th of April 1855.

The defendants severally filed their answers to this bill of revivor, to which the complainant put in a replication. A commission to take testimony was issued, and testimony taken thereunder. Upon the final hearing of the cause, the Hon. Thomas Devecmon, as special judge, passed a decree dismissing the bill, and from that decree the complainant appealed to this court.

The first question which presents itself, is, whether this suit was properly transmitted, under the provisions of the Constitution and the Acts of Assembly passed in pursuance thereof? That must be considered undisposed of, in the view of the Constitution, which may be proceeded with. The Act of 1820, ch. 161, secs. 4 and 5, forbids the idea of abatement, and provides a medium through which a cause in chancery may be prosecuted. See, also, *Story's Eq. Pl.*, 354. If this suit did not abate, then, under the Constitution, it must be regarded as undisposed of and unfinished; and when removed, as it was under the Act of 1854, ch. 149, sec. 4, to the circuit court, sitting in equity, it must be carried on as if it had not been removed, and must be regarded as a continuance of the same cause.

We may consider all questions of limitations and *laches* growing out of this case, prior to 1842, as settled by the decision of this court in 12 *G. & J.*, 271. And our enquiry is confined to the conduct of the parties litigant since that period. It appears, from the record, Hebb, the original defendant, lived until the 17th of May 1846, and being in court called upon to account, with all the material in *his* possession

36    v.17

by which an account could be taken, could himself take no advantage of the apparent *laches* of the complainant, especially after the decree to account—that decree, in effect, calling on both parties to be active in the conduct of the cause. It is a sound maxim that, in cases like this, each case is to be determined according to its own facts. After a careful examination of the facts and incidents of this case, we see no just reason to sanction the decree of the court below, upon the ground of *laches* on the part of the complainant.

It is insisted that the defendant, Smith, should be protected under his plea of *plene administravit.* That, under the circumstances, this court, in the exercise of its equity power, should regard the notice given by him, and the delay to make distribution for nearly two years, as an equitable compliance with the law.

Whatever force there may be in this suggestion, we deem it more conducive to the proper administration of the law, to guide our judicial conduct by precedent analogous decisions. To interfere with the legislation by which special jurisdiction is conferred on inferior courts, would create greater uncertainty and confusion in their judicial proceedings. And in reference to notice to creditors having claims against the estates of deceased persons, the reciprocal obligation of representative and creditor should be maintained. We regard the case of *Rawlings vs. Adams,* 7 *Md. Rep.,* 27, as directly in point, and, therefore, not to be disregarded by us. And though the point was made, in the argument of this case, that the Act of 1798, ch. 101, might be so construed as that the six months notice to be given to creditors, could be construed lunar months, we think the case in 7 *Md. Rep.,* before referred to, excludes such a construction; the similarity in that and this case, in this particular, being too striking to be overlooked.

One other point remains to be considered by this court, and that is, whether the complainant had a right, by his bill of revivor, to make the widow and heirs at law of George Hebb parties, and by an allegation of the insufficiency of personal assets to pay his debts, give to his bill the attributes of a cred-

tors bill, under the Act of 1785, ch. 72, and obtain a decree for the sale of the real estate?

We can see no valid objection to such a course of proceeding. If the claim of the complainant was a valid one, due by Hebb at the time of his death, (of the validity of which, we, however, express no opinion,) and the distribution made by his administrator was not in conformity with law, the parties to whom the fund was distributed are properly in court in this case, and having sanctioned the proposition that the bill might assume the attributes of a creditors bill, the heirs at law, in that relation, were properly made parties.

If, upon the death of Hebb, the suit then pending had been abandoned, and the complainant had resorted to an original creditors bill, however just his claim might be, he would have lost the benefit of his *lis pendens*, and have let in the defences set up by the defendants, especially the bar of the statute of limitations and *laches*, which Hebb, in his lifetime, could not have availed himself of, and which we cannot see the propriety of allowing his representative and heirs at law to do, in the absence of any other valid defence.

Entertaining these views, it will follow that the decree of the circuit court, dismissing the complainant's bill, should be reversed, and the cause remanded for further proceedings.

*Decree reversed, with costs in this court*
*to appellant, and cause remanded*

