## UNITED STATES *v.* MURPHY.

*(Circuit Court, D. Indiana. 1883.)*

1. BANKRUPTCY—CLAIM OF THE UNITED STATES—RIGHT OF PRIORITY IN PAYMENT—PERSONAL LIABILITY OF TRUSTEE.

By the Revised Statutes the right of priority in payment of debts due the United States is established, *inter alia,* in cases where an act of bankruptcy has been committed, and every assignee and other person, who pays debts due by the person or estate from whom or for which he acts before he has discharged

all that may be owing the United States by such person or estate, is made personally answerable for whatever may be needed to satisfy the unpaid claims of the government.

2. SAME—ACQUIESCENCE IN PROCEEDINGS AND OMISSION TO ASSERT CLAIMS—WAIVER OF RIGHT OF PRIORITY—ASSIGNEE NOT RESPONSIBLE.

The government is not bound to go into a bankruptcy court, nor is its debt barred by a certificate of discharge; but to secure priority in payment out of funds upon which such court is administering under the act, the right must be asserted in that court and worked out through that act. Failure of the government, with full knowledge of the adjudication of bankruptcy, to make this claim before final settlement of the estate, waives such right, and leaves it no ground on which to hold the assignee responsible out of his own means. Having done all he had undertaken to do when he had distributed the estate according to the terms of the act, the orders of the court, and the directions of a committee of creditors, the assignee would not be liable on an express or an implied *assumpsit*.

3. SAME—ENTRY OF SATISFACTION AS TO ONE JOINT JUDGMENT DEBTOR, SAVING THE RIGHT TO SUE THE OTHERS.

An actual release of one joint obligor discharges all; but it is otherwise where the right to sue the others is reserved. An entry of satisfaction of a judgment as to one joint debtor, expressly stipulating that it should not prejudice the creditor's rights as to the others, where it is the intention that it should prevent maintaining an action or issuing an execution on the judgment against such debtor, does not operate as a contract not to sue, but as a technical release.

4. SAME—FACTS.

After an execution had been issued by the proper officers of the government on certain real estate of one of several joint judgment debtors of the United States, another of the judgment debtors was adjudicated bankrupt and defendant appointed his trustee. During the entire course of the administration of the latter's estate, the real estate exceeded in value the amount of the whole debt, the execution on it continued in force, and the officers of the government, with full knowledge of the facts, never even intimated the right of priority for the claim, nor demanded its payment. Acting on a belief, induced by these circumstances, that the government relied for satisfaction exclusively on the property so levied on, the assignee withheld only his bankrupt's full contributive portion of the judgment, on proper demand paid this to the United States, and distributed all the assets according to law. *Held*, that the officers of the government, having received its quota of the debt, and having executed a release to the debtor whose property had been taken in execution, the trustee of the debtor was not personally liable.

In Bankruptcy.

*C. L. Holstein*, Dist. Atty., and *Chas. H. McCarer*, Asst. U. S. Atty., for plaintiff.

*Baker, Hord & Hendricks* and *Claypool & Ketcham*, for defendant.

GRESHAM, J. The United States recovered judgment in this court, in 1871, against James Burgess, Stephen Major, Greenville Wilson, and William C. Tarkington, as sureties upon the bond of Garland D. Rose, postmaster at Indianapolis. In the year following, Tark-

ington was adjudicated a bankrupt, and the defendant was appointed and confirmed trustee, to receive and administer upon the estate, under the direction of a committee of creditors and the orders of the court. The trustees converted the assets into money, which he distributed among the general creditors who had proved their claims, including himself. The money thus distributed was more than enough, after paying expenses of administration, to have satisfied the above judgment, which the defendant knew was unpaid.

To the complaint alleging these facts the defendant, in his special answer, avers that before Tarkington was adjudicated a bankrupt the marshal had levied an execution, which the plaintiff had caused to be issued, on the judgment against Burgess and others upon real estate belonging to Greenville Wilson, which was, and yet is, worth more than enough to satisfy such judgment; that the attorney of the United States, who was charged with the duty of collecting such judgment, and the proper officers of the United States, who were authorized to instruct such attorney in the premises, and who also knew of the adjudication of bankruptcy against Tarkington, and of all the subsequent proceedings thereunder, neither proved the claim of the United States as a creditor, nor obtained an order recognizing their supposed priority, or directing its payment, nor objected to any of such proceedings, including the final distribution of the fund; that before any of the fund had been distributed among the creditors, and while the estate was yet in process of settlement, the marshal, who had levied on the lands of Wilson, and was maintaining such levy in force, under the direction of the plaintiff, informed the defendant that such levy was sufficient to satisfy the judgment, interest, and costs; that although Wilson had filed no contingent claim for contribution against the bankrupt's estate, yet, inasmuch as it was believed the lands so levied on would sell for enough to pay the entire judgment, the defendant withheld from distribution, for Wilson, $2,419.20, the full contributive portion of the judgment due from the bankrupt, and distributed the balance of the fund, under the orders of the court, among the creditors who had proved their claims as required by the act; that since the commencement of this suit the sum so reserved for Wilson was paid to the United States on the demand of the proper officers, and thereafter, viz., on the twenty-first day of July, 1881, the attorney of the United States, by the authority of their proper officers, made a compromise with Greenville Wilson, with respect to his liability on such judgment, whereby he paid to the United States $1,000 in full satisfaction and discharge of such judg-

ment as against him, and at the same time the attorney of the United States wrote upon the margin of the record of such judgment the following stipulation and release:

"I hereby enter, by direction of the solicitor of the treasury, satisfaction of this judgment as to Greenville Wilson, (see letter of July 17, 1881, accepting $1,000 in compromise of Wilson's liability,) without prejudice to the rights of the United States against his co-defendants herein, and provided, always, that all rights of the United States as to them, and each of them, are hereby expressly saved and reserved.

[Signed]                         "CHARLES L. HOLSTEIN,
                                  "U. S. Attorney."

Section 3466, Rev. St., provides that whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied, and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. Section 3467 provides that every executor, administrator, or assignee, or other person who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid.

It has been held that a discharge in bankruptcy does not bar a debt due the government, (*U. S.* v. *Herron,* 20 Wall. 25;) also that the government is not bound to prove a claim in the bankruptcy court, (*Lewis* v. *U. S.* 92 U. S. 619.) But it does not follow that the government, knowing that the estate of its debtor is being administered upon in the bankruptcy court, may stand by, assert no claim to the fund, suffer the settlement to proceed, and final distribution to be made under the terms of the act, without waiving its right of priority of payment out of that fund. The assignee and trustee are the mere instruments of the court in administering upon the estate; they execute the trust committed to them, in obedience to the terms of the act, and under the orders of the court, in the case of a trustee, also under the direction of a committee of creditors. Only those creditors who prove their claims, or in some proper form present

them and have them allowed, are entitled to share in the distribution of the fund. After an estate has been fully administered in bankruptcy, and the funds distributed under the terms of the act, creditors, including the government, who, with knowledge of the adjudication of bankruptcy, neglected to prove their claims, or in some form have them allowed, can assert no rights against the assignee or trustee. If the government claims a right of priority out of a particular fund in the hands of the bankruptcy court, it is reasonable and just to treat an omission to assert that right as a waiver of it.

Section 5101, Rev. St., provides that, in the order of distribution, the following claims shall be entitled to priority: *First,* costs; *second,* debts and taxes due the United States; *third,* debts and taxes due the state; *fourth,* wages due to operatives, etc.; and, *fifth,* debts due to persons subrogated to the government's right of priority.

The government is not bound to go into a bankruptcy court, nor is it bound by a certificate of discharge; but if it claims priority out of a fund upon which that court is administering under the act, it must assert that right, just as the state and operatives and persons subrogated to the rights of the government are required to do, to be entitled to share in the distribution of that fund. The government's right of priority of payment out of a fund in the hands of the bankruptcy court must be worked out through the act.

It is true that the defendant settled the trust and distributed the fund with knowledge of the judgment against the bankrupt and others, but it is also true that the government knew Tarkington's estate was in bankruptcy, and wholly omitted to assert any right of priority until after the fund had been distributed and the trust had been fully executed under the direction of the committee of creditors and the orders of the court. The government thus waived its right of priority, and assented to the distribution of the fund among the creditors who had established their right to it under the terms of its own law, and it would be unjust, if not oppressive, to now compel the trustee to pay the balance of the judgment out of his own means.

The government had levied upon real estate of Greenville Wilson, sufficient to pay the judgment, before Tarkington went into bankruptcy. This levy was kept alive during the entire time that the defendant as trustee was settling the estate. There can be no doubt that in good faith he executed the trust, and distributed the fund among the creditors who had proved their claims, believing that the government was relying upon the specific lien which it had acquired

on the real estate of Wilson. Whether this was the purpose of the attorney of the government and the proper officers of the treasury department, who had control of the judgment, or not, they, by their conduct, induced him to think it was. With full notice of everything that was done in the settlement of the estate, and without intimation of any kind, before distribution, that it claimed a right of priority in the fund, the government now sues the trustee personally, as upon an implied *assumpsit*. The defendant's undertaking when he accepted the trust was that he would administer the estate according to the act, and the orders of the court. This he did. There was no *assumpsit*, express or implied, to do anything else. It would be clearly inequitable and unjust, on the facts already stated, to charge a liability on the defendant, and the law implies no *assumpsit* under such circumstances.

Thus far I have considered the demurrer to the special answer without reference to the compromise between the government and Wilson. This occurred long after the defendant had distributed the fund and had been discharged from his trust, and after the bringing of this suit. An actual release of one joint obligor discharges all, though it is otherwise in a covenant not to sue. It has been decided in numerous cases that a release reserving the right to sue others is not a technical release, but only a covenant not to sue. It seems clear that both the government and Wilson understood that the latter was to be absolutely discharged from all liability on the judgment. The entry was not a covenant to release the levy or to suspend further proceedings on the judgment, but a perpetual "satisfaction" of it as to Wilson. No execution can issue on the judgment against him, and no action can be maintained on it against him. It would be a strained construction of the entry of satisfaction to hold that the government meant no more than a contract not to sue on an existing judgment. If the entry was only intended to have the effect of a covenant not to sue, then the government might maintain an action against Wilson on the judgment, and his only redress for the breach would be an appeal to congress for relief. The duty of paying the judgment rested alike upon all the defendants, and the absolute satisfaction of it as to one, discharged all. *Cheatham v. Ward*, 1 Bos. & P. 630; *Ballam v. Price*, 4 E. C. L. 418; *Nicholson v. Revell*, 31 E. C. L. 166; *Kearsley v. Cole*, 16 Mees. & W. 127; *Jay v. Wurtz*, 2 Wash. 266; *Wiggins v. Tudor*, 23 Pick. 444–5; 1 Lindley, Partn. 433.

Demurrer overruled.

PUBLIC OFFICERS AND AGENTS—AUTHORITY OF AND LACHES OF. "The government is not bound by the act or declaration of its agent unless it manifestly appears that he acted within the scope of his authority, or was employed in his capacity as a public agent, to do the act or make the declaration for it. Individuals, as well as courts, must take notice of the extent of authority conferred by law upon a person acting in an official capacity."(a) "The government is not responsible for the laches or wrongful acts of its officers."(b) Laches, however gross, cannot be imputed to the government. This maxim is founded, not in the notion of extraordinary prerogative, but upon great public policy.(c) "The rule that the government cannot be held responsible for the mistakes of its agents includes mistakes of law as well as mistakes of fact."(d)

PRIORITY OF DEBTS DUE THE UNITED STATES. Section 3466, U. S. Rev. St., gives a priority to debts due the United States in all cases of insolvency, and section 3467, Rev. St., renders personally liable any trustee of such an estate who pays any debt of the estate before he satisfies and pays the debt due the United States. Congress had power to pass the act.(e) No *bona fide* transfer is overreached by the act, nor are vested liens superseded.(f) There must be a legal and known insolvency, such as bankruptcy or an assignment.(g) A mere inability of the debtor to pay his debts is not insolvency within the statute.(h) The priority does not supersede the assignment of the debtor or set it aside. The United States has simply a right of priority of payment out of the fund in the hands of the assignee, who is rendered personally liable if he fails to pay the debt of the United States.(i)

In construing the statute the following principles may be laid down: (1) No lien is created by the statute; (2) the priority established can never attach while the debtor continues the owner and in the possession of the property, although he may be unable to pay his debts; (3) no evidence can be received of his insolvency until he has been divested of his property in one of the modes stated in the section; (4) whenever the debtor is thus divested of his property, the person who becomes invested with the title is thereby made a trustee for the United States, and is bound to pay the debt first out of the proceeds of the debtor's property.(j) The fact that an assignee who neglected to pay the claim of the United States had distributed the land under the orders of a state court, will not protect him from the personal liability imposed by the statute, provided that he had notice of the existence of the claim of the United States. The United States are not bound to appear and become parties to the proceedings in the state court. The priority of the United

(a) U. S. v. Whitesides, 93 U. S. 247 ; Mayor v. Eschbeck, 17 Md. 282.

(b) Hart v. U. S. 95 U. S. 316 ; Jones v. U. S. 18 Wall. 662.

(c) U. S. v. Kirkpatrick, 9 Wheat. 735.

(d) McElrath v. U. S. 12 Ct. Claims, 201. Upon the same subject see, also, U. S. v. Vanzandt, 11 Wheat. 184; Hawkins v. U. S. 96 U. S. 691; Lee v. Munroe, 7 Cranch, 366; The Floyd Acceptances, 7 Wall. 366; Dox v. U. S. 1 Pet. 317; Smith v. U. S. 5 Pet. 292; Johnson v. U. S. 5 Mason, 423; Gibbons v. U. S. 8 Wall. 274.

(e) U. S. v. Fisher, 2 Cranch, 202.

(f) U. S. v. Fisher, 2 Cranch, 202; U. S. v. Hooe, 3 Cranch, 73; Thelusson v. Smith, 2 Wheat. 396; Conrad v. Ins Co. 1 Pet. 386; U. S. v. Griswold, 8 Fed. Rep. 496.

(g) U. S. v. Hooe, 3 Cranch, 73; Prince v. Bartlett, 8 Cranch, 431; Thelusson v. Smith, 2 Wheat. 396; Beaston v. Farmers' Bank, 12 Pet. 102.

(h) Conard v. Ins. Co. 1 Pet. 386.

(i) Conard v. Ins. Co. 1 Pet. 386.

(j) Beaston v. Farmers' Bank, 12 Pet. 102

States attaches in virtue of the assignment and notice to the assignee of their debt; and it is the duty of the assignee to make known the debt as having such priority.(k)     Those affected by the statute are persons "indebted to the United States." The language is without qualification. The form of the indebtedness is immaterial. The debt may be legal or equitable, and incurred in this country or abroad. The debtors may be joint or several, and principals or sureties. The United States is in nowise bound by the bankrupt act. The clause of that act giving priority to debts due the United States is *in pari materia* with the acts in question, and was doubtless put in to recognize and reaffirm those acts. The United States need not, therefore, file their claim in the bankruptcy proceedings, but may bring their suit against the trustee in the circuit court which has jurisdiction. Where there is bankruptcy, the same remedies are applicable as if the fund had arisen in any other way. Neither statute contains any qualification, and the court can interpolate none. Where the debt is due from a partnership, the rights of the United States are the same as if the partners were severally liable. The United States are entitled to priority out of their separate property in preference to all other debts, notwithstanding the rule in equity, recognized by the bankrupt act, that partnership property is to be first applied in payment of partnership debts, and individual property in payment of individual debts.(l)

RELEASE OF CO-SURETY OR JOINT DEBTOR. "It seems now clearly established at law that a release or discharge of one surety by the creditor will operate as a discharge of all the other sureties, even though it may be founded on a mere mistake of law. But it may be doubtful whether the same rule will be allowed universally to prevail in equity. Thus, if a creditor has accepted a composition from one surety and discharged him, it has been thought he might still recover against another surety his full proportion of the original debt. In other words, such surety, notwithstanding such discharge, might be held liable in equity to pay his share of the original debt, treating each as liable for his equal *pro rata.*(m)    The leading case on the subject is *Ex parte Gifford,*(n) in which Lord Eldon said, *inter alia,* that the creditor, in discharging one surety, "may reserve his remedy against the other surety expressly." The whole release must be considered, and if it be general in its terms it may be limited and controlled in its effects by the limitation in the recital; and it may expressly extend to only a part of the claim, or to the party released, with express reservation of rights against other parties, in which case it will be construed only as a covenant not to sue.(o)    The legal operation of a release to one of several joint contractors may be restrained by the express terms of the instrument itself. Courts endeavor to carry out the intention of the parties by holding the instrument to be a covenant not to sue, and not a release.(p)    Where a release of one of two sureties, who had entered into a joint and several covenant to pay an annuity in default of payment by the grantor, was accompanied by a proviso that such release should not prejudice the right of the grantee to enforce its payment against the grantor and the other surety,

(k) Field v. U S. 9 Pet. 182.
(l) Lewis v. U. S. 92 U. S. 618.
(m) Story, Eq. Jur. § 498a.
(n) 6 Vesey, 805.

(o) 2 Pars. Cont. 714.
(p) Chit. Cont. (11th Amer. Ed.) 1155. See, also, Whart. Cont. § 832; Brandt, Suretyship, § 383; Story, Cont. (5th Amer. Ed.) §§ 63, 67.

or either of them, it was held that the proviso restrained the operation of the release, and that the liability of the co-surety was not affected thereby.(q) Courts will not suffer the strict letter of a release to defeat the intention of the parties. Hence, even general words of release cannot operate to enlarge a previous statement, which defined the particular object of the agreement.(r) The release pleaded must be a technical release, under seal, expressly stating the cause of action to be discharged. No release is allowed by implication; it must be the immediate legal result of the terms of the instrument which contains the stipulation.(s)

RELEASE OF PRINCIPAL. Even in the case of a discharge of a principal debtor, if the rights of the creditor against the surety are reserved in the release of the principal, this is not to be construed as extinguishing the remedy against the surety, but merely as a covenant not to sue the principal.(t) The rule that the unconditional release of one surety releases all his co-sureties seems to rest upon two reasons: (1) The release gives rise to a presumption that the debt is satisfied; and (2) because the unconditional release destroys the co-surety's right of contribution against the released surety for any excess he may pay above his *pro rata* proportion, and thereby increases his liability. A release which expressly reserves the remedy against the co-surety is open to neither of these objections. Its *tenus* rebut the presumption of satisfaction; and by accepting the limitation in the release the released surety enters, as it were, into an agreement that the creditor may still pursue his remedy against the co-surety; and justice requires, and he impliedly agrees, that if by reason of his making such agreement the co-surety is compelled to pay more than his proportion, he will still hold himself liable for contribution as though he had not been released. That this right of contribution against a surety who has accepted such a release exists in favor of his co-surety seems well settled;(u) and, by analogy, in case of release of the principal.(v)

CONTRA TO VIEWS SUPRA. In *Nickson* v. *Revel*(a) there appears a severe criticism on the case of *Ex parte Gifford*, and the ability to limit the effect of a release to only the person to whom the release was granted is denied. The release given in that case, however, contained no reserve of remedies whatever, and the decision, so far as that point is concerned, seems an *obiter dictum*. Justice STORY, in commenting on the two cases, says as to *Ex parte Gifford:* "I see no reason to question either the accuracy of the report or the soundness of the doctrine."(b) In *Wiggins* v. *Tudor*(c) it is held that the reserve of remedies against the co-surety will not preserve the creditor's right against

(q) Thompson v Lack, 3 Man., G. & S. 540.

(r) Solly v. Forbes, 2 Brod. & B. 46.

(s) Bailey v. Berry, 8 Amer. Law Reg. (N. S.) 270; Shaw v. Pratt, 22 Pick. 305. See, also, the following cases in which it was held that a release to one of two joint-obligors would not release a co-obligor against whom the creditor's rights were expressly reserved by the terms of the release: Willis v. De Castro, 21 Law Rep. 376; Seymour v. Butler, 8 Clarke, (Iowa,) 305; Couch v. Mills, 21 Wend. 424; Crane v. Alling, 3 Green, (N. J.) 423; The Bank v. Osgood, 5 Barb. 455; Durrell v. Wendell, 8 N. H. 369; Lane v. Owings, 3 Bibb, 247;

McAllister v. Sprague, 34 Me. 296; Burke v. Noble, 48 Pa. St. 168; Ainsworth v. Brown, 31 Ind. 270.

(t) Whart. Cont. § 832; Kearsley v. Cole, 16 Mees. & W. 127; Clagett v. Salmon, 5 Gill & J. (Md.) 314; Solier v. Loring, 6 Cush. 537; Green v. Wynn, L. R. 4 Ch. App. 204; De Colyer, Guaranties, 403.

(u) De Colyer, Guaranties, 406; Hill v. Morse, 61 Me 541; Clapp v. Rice, 15 Gray, 559.

(v) Clagett v. Salmon, 5 Gill & J. (Md.) 314; Kearsley v. Cole, 16 Mees. & W. 127.

(a) 31 E. C. L. 166.

(b) Eq. Jur. § 498a, note

(c) 23 Pick. 444.

him. As shown in this note there is great weight of authority against this view, and the case could hardly have been well considered, when the case of *Shaw* v. *Pratt*,(d) where the contrary opinion was expressed, was neither cited by counsel nor noticed by the court, although decided shortly before in the same forum.                                                                        * .: *

(d) 22 Pick. 305.