Riarl *vs.* Wilhelm.—1845.

HENRY RIARL *vs.* HENRY WILHELM AND SAMUEL WILHELM.
*December* 1845.

In an action of *assumpsit*, the plaintiffs proved, that they and defendant were partners; that in *April* 1841, the defendant told the witness, that two or three days before, they had dissolved partnership. In March 1841, there was a balance of cash to the credit of the firm; and in June of that year, it was drawn out by the defendant, he urging, as a reason why he drew it out, that if the plaintiffs got it, he did not know whether he could ever get any of it again; the plaintiffs further proved, that in August 1842, the defendant stated the balance of the money in bank, in March 1841, belonged to the plaintiffs, and he had drawn the sum of, &c., thereout, by check. The defendant offered no proof; HELD:

1st. That a prayer by the defendant, to instruct the jury, that the evidence was not sufficient to enable the plaintiffs to recover upon, admitted, as proof, all the facts sworn to, and all rational inferences deducible from such facts.

2nd. That the proof did not tend to prove a promise from the defendant, to pay the plaintiffs any sum.

3rd. The ground on which partners, after a dissolution, can sue each other, in relation to what had been partnership funds or effects, is, that the joint interest as partners having ceased, a new contract had been made between the parties, in their individual, as distinct from their partnership characters.

4th. The joint interest can only be terminated by an agreement, vesting a separate title or interest in the thing, to which, before that time, there had been a joint title, and the rule equally applies to money, as to choses in action.

5th. Property which belonged to *three* partners, cannot become the separate property of *two* of them, except by an express agreement to that effect.

In every case in which property has been held by partners, it is necessary, to enable one of them to maintain an action at law for it, against another, to show a final settlement of the partnership concerns, and a distribution of the property to the party claiming, which, in effect, is a release of the rights of the other.

If the claim be for money, there must be a promise to pay an ascertained sum.

It is not necessary that a witness should testify to a positive promise. As in other cases, so in this, what is sufficient proof, is a question for the jury, and the fact may be established by circumstances, and just and fair inferences from facts, as well as by positive testimony.

But, in this case, where two, of three partners, are jointly suing the third, before it can be established, that he had made himself responsible to them, there should be proof of some fact going to show, that they had, *inter se*, entered into a new agreement.

APPEAL from *Carroll* county court.

This was an action of *assumpsit*, commenced on the 13th September 1842, by the appellees against the appellant. The cause was submitted to the jury on the general issue, who found a verdict for the plaintiffs.

1st EXCEPTION. The plaintiffs to support the issue joined on their part, offered in evidence to the jury, by —— *Wilhelm*, a competent witness, that more than fifteen years ago, the plaintiffs were in partnership with each other, as drovers; at that time he did not know the defendant, and never knew there was such a man, until less than ten years ago. That within the last three or four years, the plaintiffs and defendant have been engaged and connected together as partners, in the business of drovers; but whether they were all three partners together, or whether *Samuel Wilhelm* and *Riarl* were partners, and *Henry Wilhelm* had an interest in *Samuel Wilhelm's* interest, in the firm of *Wilhelm & Riarl*, witness does not know; that the witness was employed by them, in the driving of their stock from *Pennsylvania* to the city of *Baltimore*; that both, *Henry Wilhelm* and *Samuel Wilhelm*, bought stock in *Pennsylvania* for the concern, and that the stock, when driven to *Baltimore*, was sold to butchers, sometimes by the defendant, and sometimes by each of the plaintiffs; that frequently, whilst he was employed in driving their stock to *Baltimore*, in company with the defendant, he understood from the defendant, that both the plaintiffs were concerned with him in the droving business, each having an equal interest therein; that he recollects once, whilst thus driving, the defendant observed, "they would have made much more money, if it had not been a three-handed business;" that the business was car-

ried on in the partnership names of *Wilhelm & Riarl*, and *Riarl & Wilhelm*. And further offered evidence, by *George Suter*, a butcher of the city of *Baltimore*, that he had dealt with the firm for several years, buying stock of them separately; sometimes dealing with one of the firm, and sometimes with another, having bought stock separately from each of them, who dealt with him, and whom he always regarded as partners, in the said droving business; that on the last day of March, or the first day of April 1841, the defendant told the witness, that "they, (meaning, as the witness understood him, the plaintiffs and defendant,) had, two or three days before, dissolved partnership, and had settled their affairs;" the defendant told the witness, that *Samuel Wilhelm* had quit the drover's business, but that he, the defendant, would continue to carry it on separately on his own account, and that he hoped he, the witness, would continue to buy stock of him. And further offered in evidence, by *John Fisher*, the cashier of the *Bank of Westminster*, that said concern opened an account with the said bank, and transacted its business therewith, and had notes taken for stock sold by them, discounted thereat, for and on account of the concern; that the checks by which the money of the concern was drawn out of the bank, were signed, some of them "*Henry Riarl & Co.*," and some "*Samuel Wilhelm & Co.*," the first of said signatures being in the handwriting of the defendant, and the second in that of the plaintiff, *Samuel Wilhelm*. That after the dissolution of the firm, reported to have taken place, and sometime in June 1841, the defendant applied to him, to pay out to the defendant the balance due to the firm by the bank, which, from what he had heard of disputes between the partners, he refused; but, upon the defendant threatening an immediate suit against the bank, if he did not so pay, the witness permitted him to check out all the said balance, except sixty-seven dollars and some cents, upon his giving bond to indemnify the bank. That the witness regarded the plaintiffs and defendant, as partners in the said firm. The said defendant urged as a reason why the money should be paid to him, that if *Samuel Wilhelm* got the money, the defendant did not know whether he could ever get it, or any

of it, again, as he was not sure that *Samuel Wilhelm* was worth any thing; and that if his father got it, he lived in *Pennsylvania*, and defendant would have great difficulty in getting any thing out of him; that on the 20th August 1842, in a conversation between the witness and the defendant, the latter stated, that in the month of March 1841, of the balance of the money then standing in the said bank to the credit of the said firm, the sum of $3350, belonged to *Wilhelm*, (meaning the plaintiffs, as the witness understood.) That on the 14th June 1841, the defendant, by a check drawn by him, drew out of the said bank, of the money standing to the credit of said firm, the sum of $2025.

Whereupon, the defendant made the two following prayers to the court :—

1st. The defendant, by his counsel, prays the court to instruct the jury, that the plaintiffs, from the pleadings and evidence in this case are not entitled to recover, because they have not introduced to the jury, any sufficient evidence of a final settlement between them and the defendant, of all their partnership accounts and transactions, and the striking of a balance due to the plaintiffs, to be submitted to the jury, to sustain this action in the form it is brought.

2nd. Because there is no evidence given to the jury, in this case, to prove a promise to pay to the plaintiffs any balance found due to them by the defendant, even if it should be believed, that a final settlement of all the partnership accounts and transactions has been made, and a balance struck; and because such promise is necessary, to enable the plaintiffs to sustain this action, in case of a settlement and balance struck.

Which prayers were refused by the court, (DORSEY, C. J., WILKINSON and BREWER, A. J.,) and to such refusal the defendant excepted.

2ND EXCEPTION. The defendant, by his counsel, upon the facts stated in the first bill of exceptions, prays the court to instruct the jury:—

That if they believe from the evidence, that the plaintiffs and the defendant were partners, and previous to the action brought, came to a settlement of their partnership accounts,

and struck a balance; which balance was in favor of the plaintiffs in any particular sum, and that said plaintiffs were entitled to an equal proportion of that balance, and that thereupon the partnership was dissolved, yet the plaintiffs cannot recover, unless the jury also find from the evidence, that the defendant promised to pay that balance to the plaintiffs jointly: because a balance struck among partners, and a dissolution of the partnership, is not sufficient to sustain an action of *assumpsit*, unless there is also a promise by the defendant to pay that balance. But the court refused to grant this prayer, because it did not appear from the proof and proceedings in the cause, or the claim for which a recovery was sought, by the plaintiffs, at the hands of the jury, that in the settlement of the affairs of the partnership, (if the jury find that any such settlement was made,) that there was a balance in the hands of the defendant due to the plaintiffs; nor did it appear that the suit was brought to recover any such balance, the plaintiffs insisting, that on the settlement which they allege did take place between the partners, there was no balance in the hands of the defendant due to the plaintiffs; but that after the dissolution of the partnership, upon their settlement of their affairs, and dividing and distributing their partnership effects between themselves, three thousand and fifty dollars of the balance standing to their credit in the *Bank of Westminster*, was assigned, or allotted to the plaintiffs, and that said sum of money was, subsequently, wrongfully and in violation of the said partnership settlement, withdrawn from the bank by the defendant, and appropriated to his own purposes, and that they therefore had a right to recover it from the defendant, in an action for money had and received to their use. Under such circumstances, the court, without considering the accuracy or inaccuracy of the principle of law asserted by the prayer, refused the instruction prayed, on the ground of its irrelevancy to the matters in controversy before the jury; and its tendency, if granted, to bewilder and mislead them. To which refusal of the court the defendant excepted.

3RD. EXCEPTION. In addition to the facts contained in the defendant's first bill of exceptions, which are to be taken and

considered as a part of this, his third bill of exceptions, the defendant further offered evidence by *John Fisher*, the cashier of the *Westminster Bank*, on his cross-examination, that on the 13th day of March 1841, the firm of *Henry Riarl & Co.*, had on deposit in the *Westminster Bank*, the sum of $6096.21; and on the same day said *Riarl*, defendant, drew $150; by check; and *Samuel Wilhelm* drew $800, by check. On the 20th March 1841, a check dated March 1st, 1841, payable to *McDevitt*, and drawn by defendant, was presented to the bank, and paid to *McDevitt*; on the 27th March 1841, plaintiff, *Samuel Wilhelm*, drew from the bank $1084; March 29th 1841, *Riarl* drew $100; April 5th, 1841, *Wilhelm*, drew $550, and $300, same day, $150 drawn by *Riarl*; 17th April 1841, *Wilhelm* drew two checks, one payable to self, for $300, the other; to *Layer's* protested note, $332 endorsed by the said firm, and discounted for the benefit of the plaintiffs and defendant at said bank; 14th June, *Riarl* drew $2025. August 9th, same year, *Wilhelm* drew balance, $67.71. The firm got credit for a protested note, the amount of which was, before the institution of this suit, drawn out of said bank by the defendant; and further offered evidence, that two or more of said checks were drawn by said *Samuel Wilhelm*, to pay the debts of the said firm; and that one of such checks, for $300, was drawn to enable the *Barringers*, butchers in *Baltimore*, to pay at maturity, a note for a much larger amount, which they had given to the said firm for stock sold to them, and which the said firm had discounted for its account and benefit, at the said bank ; and that said $300 was subsequently, and prior to the 12th of June 1841, paid by said *Barringer* into said bank, to the credit of the said firm, and on the said 12th day of June was checked out of the said bank by the said defendant.

Whereupon the defendant, by his counsel, prayed the court to instruct the jury, that the evidence in the cause, taken altogether, is not sufficient to prove and justify the jury in finding a verdict, that there was a final settlement and balance struck of all the partnership business, and a dissolution of the partnership; and a promise by the defendant to pay the plaintiff

46    v.3

such balance, or any specific ascertained sum; which prayer the court refused to grant; the defendant excepted.

The judgment being against the defendant, he prosecuted this appeal.

The cause was argued before ARCHER, C. J., CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By RAYMOND and PALMER for the appellants, and
By W. P. MAULSBY for the appellee.

CHAMBERS, J., delivered the opinion of this court.

This is an action of *assumpsit*, for money had and received by defendant to the plaintiff's use, with a count also on an *insimul computasset*.

The plaintiff below, the appellee here, proved, that for several years prior to the suit, a partnership had existed between the parties, plaintiffs and defendant, and that from time to time, the firm had obtained credits at the *Bank of Westminster*, in which were considerable sums of money standing to the credit of the firm. The plaintiff proved by the admissions of the defendant, in conversation with the witness, held on the last of March or first of April 1841, that a few days before the conversation, the partnership had been dissolved, and the parties had "settled their affairs." The plaintiff also proved by the cashier of the bank, that in a conversation with defendant, held on the 20th August 1841, the defendant stated, that of the balance standing in the said bank to the credit of the firm, on the 1st March 1841, the sum of $3350 belonged to the plaintiffs. This money had been checked for, and drawn out of the bank by the defendant, except a small sum, in June 1841.

No testimony was offered by the defendant, who, thereupon, moved the court to instruct the jury, that the plaintiffs, from the pleadings and evidence in the cause, were not entitled to recover, upon the ground, that no evidence had been given to prove a promise to pay the plaintiffs any balance found due on a final settlement.

This prayer to the court, necessarily admitted, as proof before the jury, all the facts sworn to by the witnesses, and all rational inferences deducible from such facts.

We have attentively considered the testimony, and cannot find in any part of it the slightest fact or inference, tending to prove a promise from the defendant, the now appellant, to pay the plaintiffs below, the appellee here.

The ground on which partners, after dissolution, can sue each other, in relation to what had been partnership funds or effects, is, that the joint interest, as partners, having ceased, a new contract had been made between the parties, in their individual, as distinct from their partnership characters. The joint interest can only be terminated by an agreement, vesting a separate title or interest in the thing, to which, before that time, there had been a joint title.

It is by no means important in this view of the case, whether the credit in the bank is to be regarded as a chose in action, or as evidence of there being so much money, the property of the firm, a question which was much debated. The same law would apply in either case.

We will treat it as money, according to the doctrine of the appellees. This money the appellant received, and the question was, whether, having been placed there as the money of the firm, consisting of three persons, it could become the separate property of two of them, except by an express arrangement and agreement to that effect?

In every case in which property has been held by partners, it is necessary, we think, to enable one of them to maintain an action for it against another, to show a final settlement of the partnership concerns, and a distribution of the property to the partner claiming, which, in effect, if not in form, is a release of the rights of the other. If the claim be for money, we think it necessary to prove the final settlement of the partnership concerns, and a promise to pay an ascertained sum. Until this is done, each partner has an interest in the entire thing or sum of money, as he is responsible also for the whole amount of the partnership indebtedness, and, therefore, cannot at law be compelled to part with the property or funds by his co-partner.

It is not intended that a witness must be produced on the stand, to testify to a positive promise. As in other cases, so in this, what is sufficient proof, is a question for the jury, and the fact may be established by circumstances, and just and fair inferences from facts, as well as by positive testimony.

The present case, however, is stronger than that of one partner suing another. Their dissolution and statement of a balance, might well be regarded as circumstances, to aid any general declarations of the opposite party, which acknowledged separate ownership, and make a case for the consideration of a jury. The inference is not entirely in opposition to the premises, to say the least of it, that on a dissolution of a partnership, and a settlement of accounts, each partner is to receive his proportionate share of the property or money remaining for distribution; but it does seem to be a most unwarrantable inference from the same facts, that one partner had made himself liable to the other members of the firm, as joint owners of the property, or joint claimants of the fund. Certainly, before such a conclusion can be reached, there should be some fact going to show, that those other members of the former firm, after a dissolution of the first partnership, had, *inter se,* entered into a second.

Our conclusion is, that the court erred in refusing to give the instruction in the first bill of exceptions.

The question raised by the second exception is, in effect, disposed of by what has been said. The appellant, (the defendant below,) assumed as the basis of his prayer, that the plaintiffs and defendant had been partners, and "had come to a settlement," and struck a balance in favor of plaintiffs in any particular sum; and the court was asked to say, that the jury could not find for the plaintiffs, unless they were satisfied by the evidence, that there was a promise to pay. We think the instruction should have been given. The court refused on the ground, that it did not appear from the proof and proceedings in the cause, that any such balance existed in the hands of the defendant; nor did the plaintiff below claim a balance in the hands of the defendant, appearing by a final settlement; but claimed a certain sum of money, standing in the bank

books to the credit of the firm, as allotted to the plaintiffs upon a settlement of the partnership accounts.

The partnership was fully proved; and it was also proved, that this money had been part of the partnership fund. The plaintiffs are said to claim in virtue of "a settlement of the partnership affairs, as a division and distribution of the partnership effects between themselves," so that the concession in the prayer, of "a settlement, and balance struck in favor of plaintiffs," was in accordance with the pretensions of the plaintiffs. When, therefore, the defendant received this money, he did so, either as a partner,—and if so, there was an end of the case,—or after a dissolution and final settlement of all partnership concerns, and a distribution and allotment to each, of his particular share. In this last case the plaintiffs, clearly, could not maintain a joint action, without an express promise. If *A* receives the money of *B*, one thousand dollars, and at the same time and under similar circumstances, receives one thousand dollars, the money of *C*,—a joint action by *B* and *C* to recover the two thousand dollars, cannot be sustained. The fact, that the plaintiffs claimed it as their joint property, would not make it so. The right of recovery must be determined by the proof, and if the claim is not consistent with the facts, it must fail.

After offering some testimony, as to periods at which various portions of the funds in bank were checked out, and by whom; and for what objects, the instruction, stated in the third exception, was asked by the defendant, and refused.

It is to the same effect, precisely, as the instruction moved for in the first exception, that there was no evidence to justify the finding of the several facts mentioned: that is to say, a final settlement, and balance struck of all the partnership affairs; *and*, a dissolution of the partnership; *and*, a promise to pay the plaintiffs such balance.

What is said above will, therefore, sufficiently explain the views of the court upon this exception. The judgment of the court below is reversed on each of the exceptions: and to enable the appellees to supply the necessary proofs to sustain their action, if they can furnish it, we will order a procedendo.

JUDGMENT REVERSED, &c.