SAMUEL WILHELM, Surviving Partner of HENRY WILHELM, *vs.* LEVI CAYLOR, Exec'r of HENRY RIAEL, dec'd.

*Bill for an Account between Partners barred by Limitations—Equity Practice—Jurisdiction of the Court of Appeals.*

A partnership having been dissolved, on the 28th of March, 1841, by mutual consent, W, one of the partners, filed, on the 28th of November, 1848, a bill for an account against the other partner. There being no evidence of any dealing or transaction between the partners themselves, or as between the partners, or either of them, and third persons, on account of the partnership after 12th of June, 1841, HELD:

That the bill for an account was barred by the Statute of Limitations.

An account between one partner and another, in reference to their partnership affairs, is not embraced within the exception to the Statute of Limitations in regard to accounts that concern the trade or merchandise between merchant and merchant.

Where a Court of Equity has concurrent jurisdiction with a Court of Law, it must equally obey the Statute of Limitations.

Where a Court of Equity has sole jurisdiction, it follows, by analogy, the Courts of Law, and refuses to entertain claims when similar claims would be barred by limitations in a Court of Law.

A bill for an account in equity is a concurrent remedy with an action of account at law, and is equally barred by the Statute of Limitations; nor is there any reason why a bill for an account, by one partner against another, should be exempted from this rule.

Wilhelm *vs.* Caylor, Ex'r of Riael.

A Court of Equity having passed an interlocutory decree, referring the matters in dispute to an Auditor with authority to take testimony and state an account afterwards, on final hearing dismissed the bill as barred by the *Statute of Limitations.* HELD :

1st. That the interlocutory decree, having settled no right, and having declared no principle upon which the account was to be stated, left the whole case open to be disposed of on final hearing.

2d. That even if the Court below had, by its interlocutory decree, adjudicated the complainant's right to an account, and consequently overruled the defence of the Statute of Limitations, this would not preclude the Court of Appeals from reviewing the interlocutory decree as well as the final decree, under the Act of 1830, ch. 185, as modified by the Acts of 1841, ch. 11, and 1845, ch. 357.

APPEAL from the Circuit Court for Carroll County, in Equity.

The facts of the case are sufficiently detailed in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, ALVEY and ROBINSON, J.

*Wm. P. Maulsby* and *C. B. Roberts,* for the appellants, on a printed brief prepared previous to the appointment of the former as Judge.

*Wm. M. Merrick* and *J. J. Baumgartner,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

The bill of complaint in this case was filed on the 28th of November, 1848, and it alleges that the partnership, of which it prays an account as between the partners, was dissolved by mutual consent on the 28th of March, 1841. It also alleges that, at the time of dissolution, an account was taken between the partners of the funds and moneys belonging to the firm, when it appeared that a large sum was then standing to the credit of the firm in the Bank of Westminster, and of such money in bank the sum of $3,350 was the share or proportion

admitted by the appellee's testator to belong to the appellant and his brother, since deceased.

The bill further alleges that, of the sum thus admitted to belong to the appellant and his brother, subsequently and up to the 12th of June, 1841, inclusive, the sum of about $2,200 was drawn out of bank by the appellee's testator, by cheques in the name of the firm; the balance of the $3,350 having been drawn out by the appellant, and part of it applied to the discharge of partnership liabilities before the 12th of June, 1841, and the residue to the use of himself and his brother. It is also alleged that the appellant had frequently, before filing his bill, requested of the appellee's testator an account, and that it had been always refused. The bill discloses nothing on its face to show that there was any dealing or transaction between the partners themselves after dissolution, or as between the partners, or either of them, and third persons, on account of the partnership, after the 12th of June, 1841; nor does the bill allege anything to show why so much time was allowed to elapse before it was filed.

The appellee's testator, by his answer, denied that he was ever unwilling or refused to account with his co-partners of and concerning the business and profits of the firm, but averred and insisted that the appellant and his brother Henry had received more than their full and just proportion of the funds, moneys and effects of the partnership; and he utterly denied that he ever drew any money out of the bank that was not his own, or to which the appellant and his brother could make any just claim. He also, in his answer, pleaded and relied on the Statute of Limitations as a complete bar to the relief prayed.

On the answer being filed, and without proof, the Court, on the 6th of September, 1849, passed an order referring the cause to the Auditor, with directions to take proof and to state an account of what was actually due to the appellant on his claim as one of the partners, and as surviving partner of his brother Henry, and to report the same to the Court for its

future action, " to be either ratified and confirmed or rejected."
And the Auditor, accordingly took proof, stated an account,
and reported the same, as directed; and, on final hearing,
without going into the merits of the account stated by the
Auditor, the Court below, sustaining the defence of the Statute
of Limitations, dismissed the bill, with costs.

The first and leading question in the case as presented to
to this Court is, whether, as between the original parties to
the bill, the defence of limitations taken in the answer be
available to defeat the right to an account?

The defence set up here is not that which is peculiar to
Courts of Equity, founded merely upon the lapse of time and
the staleness of the claim, and in reference to which the Court
acts upon its own inherent doctrine of discouraging, for the
peace of society, stale demands, by refusing to interfere in
favor of a party guilty of *laches*, or unreasonable acquiescence
in the assertion of an adverse claim; but it is in the nature of
a positive bar, created by statute, to the right asserted in the
bill.

The bill is filed by one partner against another for an
account and settlement of partnership affairs.  At law an
action of account will lie by one partner against his co-
partner.  *Co. Litt.*, 171, *a*; *Bac. Abr. Account; Chitty's Plead.*,
39; *Duncan vs. Lyon*, 3 *John. Ch. Rep.*, 351.  And the pro-
ceeding in an action of account is very much like that had on
bill in equity.  The first judgment is that the defendant
account with the plaintiff, which is called a judgment *quod
computet*, answering to the preliminary decree to account in
equity; after which the Court assigns Auditors to take and
declare the account between the parties, and, upon that being
done, the final judgment is, that the plaintiff recover against
the defendant so much as may be found due.  And, as
observed by CHANCELLOR KENT, in *Duncan vs. Lyon*, it is
difficult to perceive any good reason why the action of account
has fallen into disuse, unless it is, as we suppose, because
Courts of Equity, having concurrent jurisdiction with Courts

of Law in matters of account, afford some facilities that cannot be obtained at law.

By the statute law of this State, (*Act* 1715, *ch.* 23 ; 1 *Code,
Art.* 57, *sec.* 1,) the common law action of account is not only recognized as an existing remedy, but is required to be brought, by express limitation, within three years from the time the cause of action accrued. This being the limitation to the right to have an account taken in an action at law, the question is, whether the same or a different period applies to the analogous proceeding for the same thing in equity ; or, in other words, whether it be in the power of the party seeking an account, to avoid the operation of the statute by simply electing to proceed in one *forum* rather than another. We think the statute cannot be so evaded, and that it is equally a bar to a bill for an account in equity as it is to an action of account at law.

One of the earliest cases in which the Statute of Limitations was distinctly recognized as applicable to proceedings in equity, was that of *Lockey vs. Lockey, Prec. in Chan.,* 518. That was a case of a bill filed for an account of an infant's estate, but was not filed until six years after the plaintiff had come of age ; and Lord Chancellor Macclesfield declared his opinion to be, that " if the infant lies by for six years after he comes of age, *as he is barred of his action of account at law, so shall he be of his remedy in this Court ;* and there is no sort of difference in reason between the two cases," and he decreed accordingly. And, according to the same principle, the subsequent case of *Prince vs. Heylin,* 1 *Atk.,* 493, was decided by Lord Hardwicke. There was, in that case, a demand of an account by one tenant in common against another, and the Lord Chancellor, holding that the statute was a bar to the demand further back than six years, said : "An action of account lies for one tenant in common against another, and such action is expressly mentioned in the Statute of Limitations, and as there is no remedy at law, (after six years,) there can be no reason for

any in equity." These two cases were not between partners, it is true, but they were bills for account, and where the Statute of Limitations was strictly applied, because the remedies at law and in equity were concurrent.

But the doctrine was still more comprehensively expounded by LORD CAMDEN, in *Smith vs. Clay,* 3 *Bro. Ch. Cas.,* 639, *note,* not more, however, in reference to a bill in equity for an account than to the subject matter of all other cases in that Court falling within the reason and policy of the Statute of Limitations. His Lordship asserted that the maxim, *expedit reipublicœ ut sit finis litium,* had prevailed in that Court in all times, without the help of an act of Parliament; but, as the Court had no legislative authority, it could not properly define the time of bar, by a positive rule, to the hour, or the year; it was, therefore, governed by circumstances. But, *as often as Parliament had limited the time of actions and remedies to a certain period, in legal proceedings, the Court of Chancery adopted that rule, and applied it to similar cases in equity.* For, said he, when the legislature had fixed the time at law, it would have been preposterous for equity, (which, by its own proper authority, always maintained a limitation,) to countenance *laches* beyond the period that law had been confined to by Parliament; and therefore, *in all cases where the legal right has been barred by Parliament, the equitable right to the same thing has been concluded by the same bar.* And in no less clear and decided terms has the same doctrine been stated by LORD REDESDALE, in *Hovenden vs. Lord Annesley,* 2 *Sch. & Lefr.,* 607, a case which has been repeatedly sanctioned by the decisions of this Court. That learned Chancellor, in the course of his examination of the subject, said: "But it is said, that Courts of Equity are not within the Statute of Limitations. This is true in one respect. They are not within the words of the statute, because the words apply to particular legal remedies; but they are within the spirit and meaning of the statute, and have been always so considered. I think it is a mistake, in point of language, to say that

Courts of Equity act merely by analogy to the statute; they act in obedience to it.   The Statute of Limitations, applying itself to certain legal remedies for recovering the possession of lands, for recovery of debts, &c., equity, which, in all cases, follows the law, acts on legal titles, and legal demands, according to matters of conscience, which arise, and which do not admit of the ordinary legal remedies.   Nevertheless, in thus administering justice, according to the means afforded by a Court of Equity, it follows the law." He further added, that " the statute must be taken virtually to include Courts of Equity; for, when the Legislature, by statute, limited the proceedings at law in certain cases and provided no express limitations for proceedings in equity, it must be taken to have contemplated that equity, followed the law; and, therefore, it must be taken to have virtually enacted in the same cases, a limitation for Courts of Equity also."

This being a legal demand, as we have seen, but the Court of Equity having a concurrent jurisdiction in regard to it, it follows from the principles plainly announced in the authorities just cited, that the statute is equally a bar to it as if pleaded at law to an action of account.   And so it is regarded by Judge STORY, in 2 Eq. Jur., section 1520, where he says that " the Statutes of Limitations, when they are addressed to Courts of Equity as well as to Courts of Law, as they seem to be in all cases of concurrent jurisdiction at law and in equity (as, for example, in matters of account,) to which they directly apply, seem equally obligatory in each Court.   It has been very justly observed," said he, " that in all such cases, Courts of Equity do not act so much in analogy to the statutes, as in obedience to them."

But, instead of its being a legal demand and the subject of an action of account at law, suppose the appellant's right to an account to be only equitable, and for which no other remedy exists but a bill in chancery, is he in any better position in reference to the defence of the Statute of Limitations?  Clearly not.  In such case, the statute applies strictly by analogy, and

bars equally as if the demand was purely legal. The bill in equity is an analogous proceeding to an action of account, and there is no reason why one proceeding should be barred and not the other. They are both equally within the reason and policy of the statute.

In *Bond vs. Hopkins*, 1 *Sch. & Lefr.*, 428, it was expressly held by LORD REDESDALE, that "if the equitable title be not sued upon within the time within which a legal title *of the same nature* ought to be sued upon to prevent the bar created by the Statute; the Court, acting by analogy to the Statute, will not relieve. If the party be guilty of such *laches* in prosecuting his equitable title, *as would bar him if his title were solely at law, he shall be barred in equity.*" And in the case of *Medlicot vs. O'Donel*, 1 *Ball & Beatt.*, 156, LORD MANNERS said that he considered the Statute of Limitations founded upon the soundest principles and the wisest policy; and that the Court of Chancery, for the peace and quiet of society, was bound to adopt it *in cases where the equitable and legal titles so far corresponded, that the only difference between them was, that the one must be enforced in a Court of Equity, and the other in a Court of Law.*

Having thus noticed some of the leading British authorities upon the subject, it is now proper that we should notice a few of our own; and, although it does not appear that there has ever occurred in this Court a case of a bill for partnership accounts to which the principles of the authorities referred to have been applied, the Statute of Limitations has, nevertheless, been repeatedly applied to other cases of account.

In the early case of *West vs. Jarrett*, 3 *Har. & John.*, 485, being a bill for account of rents and profits, it was held that limitation was a good plea in bar of an account, except for the three years immediately preceding the filing of the bill. And, in the case of *Watkins vs. Harwood*, 2 *Gill & John.*, 307, it was held to be a settled principle that Chancery follows the law; and, acting in obedience to the statute, the plea of limitation is as available in equity as at law, in relation to the same subject matter.

In the case of *Sindall vs. Campbell*, 7 *Gill*, 66, the Court, viewing the bill as one for an account of rents and profits, said that if there could be an action at law for the same purpose, the statute would be a bar to a suit brought in equity; as, in all cases of concurrent jurisdiction at law and in equity, the statute is equally obligatory in both Courts. And in that case the Court determined that the statute would bar a bill in equity for an account; and they instance the case where one had received the profits of an infant's estate, and after six years had elapsed from his coming of age, the infant brought a bill for account, and the Court held that the Statute of Limitations was a bar to such suit, as it would be to an action at common law; and they cite the case of *Lockey vs. Lockey, Prec. in Ch.*, 518.

The only case occurring in our reports in which the question was made of the right to take partnership accounts after a considerable lapse of time is that of *Glenn, Adm'r of Lindenberger, vs. Hebb*, 12 *Gill & John.*, 271. But, in that case, the Chancellor decreed under an agreement, and the Statute of Limitations was not pleaded or relied on; and the Court of Appeals, in reversing the decree, say, in reference to the argument, that too much time had elapsed to allow the account to be taken; that, in view of the facts of that case, such defence could not prevail, and that, where the partnership is stated in the bill and confessed in the answer, the *general rule* is, that an account is of course, unless the party has slept upon his rights. It is nowhere intimated in the opinion that the Statute of Limitations would not have barred the right to an account if it had been pleaded or relied on; nor does the question of its application appear to have been at all considered. It is plain, therefore, that that case is no authority on the question now before us.

In view, then, of the principles stated, what is there in a partnership account, as between the partners, where there have been no dealings within three years before filing the bill, nor any admission made to remove the bar, to take it out of

the general rule? Nothing, that we can perceive. After all dealings have ceased, and matters closed as between the partnership and third persons, why should there be any greater delay in settling the account as between the partners than is allowed in other cases of account? It is equally within the policy of the Statute, and there is no reason why a Court of Equity, which is always averse to delay, should extend the time in such case beyond the period prescribed by the Legislature for bringing an action of account. And to this effect is the decision of Sir WILLIAM GRANT, in *Barber vs. Barber,* 18 *Ves.,* 286, where he determined that a bill, praying an account against the representatives of a surviving partner, was within the Statute of Limitations, all accounts having ceased six years, the period within which, by the Statute of 21 James I, ch. 16, an action of account could be brought. And COLLYER, in his work on Partnership, (sec. 374,) states it as the settled law that the Statute of Limitations is a good plea in bar of a bill by one partner against another for an account.

Such being the case, all notion that this account is embraced in the exception of the Statute, in regard to accounts that concern the trade or merchandise between merchant and merchant, is precluded. And, accordingly, it is now well settled that an account between one partner and another, in reference to their partnership affairs, is not embraced within the exception. *Coalter vs. Coalter,* 1 *Rob. (Va.) Rep.,* 79; *Ang. on Lim.,* sec. 164.

It has been suggested, however, that the decree of the 6th of September, 1849, referring the cause to the auditor, with directions to state an account between the parties, and to report the same for the future action of the Court, adjudicated the appellant's right to an account, and, consequently, overruled the defence of the Statute of Limitations; and that, therefore, the Court below, in disregarding the prior adjudication in the case, which should have been taken as conclusive upon the question of the application of the Statute of Limitations, fell into error.

Be this, however, as it may, in regard to the Court below, such decree or order by no means precludes this Court from examining the questions raised by the defence taken in the cause.

It is not, of course, contended that the decree of the 6th of September, 1849, was final; and at the time it was passed, the Act of 1830, ch. 185, as modified by the Acts of 1841, ch. 11, and 1845, ch. 367, was in force, (the provisions of which as modified are embodied in the Code,) and by that Act, on appeal from the final decree or order, "all previous orders and decrees passed in the cause" were declared to "be open in the Appellate Court, in the same manner as if such previous orders or decrees had been appealed from, within nine months from the time of the passing of the same." The Acts of 1841, ch. 11, and 1845, ch. 367, gave the *immediate* right of appeal, in certain enumerated cases, but they only modified the Act of 1830, ch. 185, in so far as the latter Act restricted the right of *immediate* appeal in certain cases; but the provision that all previous orders and decrees should be open in the Appellate Court, on appeal from the final decree, was left in force. It became, therefore, optional with the party, after the Acts of 1841, and 1845, either to prosecute his appeal directly from orders of a certain character described in those Acts, or to wait for the final decree, and appeal from that, which brought the whole case before the Appellate Court, including all previous orders and decrees. *Dugan vs. Gittings,* 3 *Gill,* 138; *Phelps vs. Stewart,* 17 *Md.,* 237.

But this order of the 6th of September, 1849, was only preliminary to a decision upon the rights of the parties. It settled no right, nor did it declare any principle upon which the account was to be stated, and by which the Court was bound in the subsequent progress of the cause. No right of appeal existed from such order, and the whole case was left open by it to be disposed of on final hearing. That such is the light in which such orders have been viewed by this Court, will be seen by reference to the cases of *Snowden vs.*

*Dorsey*, 6 *H. & J.*, 114; *Hagthorp vs. Hook*, 1 *Gill & J.*, 270; *Hungerford vs. Bourne*, 3 *Gill & J.*, 133; *Roberts vs. Salisbury*, 3 *Gill & J.*, 425; *and Clagett vs. Crawford*, 12 *Gill & J.*, 275.

The majority of this Court concurring with the Court below in the decree of dismissal of the bill, such decree will be affirmed.

*Decree affirmed.*

(Decided 25th February, 1870.)

STEWART, J., delivered the following dissenting opinion:

The bill of complaint in this case was filed in the Court below by the complainant, surviving partner of his brother and himself, against the defendant, as executor of the other partner, for an account and settlement of the partnership alleged to have existed, and to have been dissolved by the mutual consent of the partners. It averred, substantially, that the dealings between the partners had never been settled, and that upon a final accounting there would be found a considerable amount due and owing to the complainant from the defendant. The defendant admits by his pleadings the partnership and its dissolution, that there had been no final settlement of its affairs, asserts that he was always ready to account, but denies any indebtedness, and insists upon limitation. In brief, the complainant insists upon an account and settlement of the partnership; the defendant confesses his readiness always to account, denies any indebtedness, and relies upon limitation.

The cause was submitted upon this state of the pleadings, on the 6th of September, 1849, and the Court, on that day, decreed that the case be referred to the auditor, with directions to state an account between the parties, of what is actually due to the complainant on his claims as one of the partners, and the surviving partner of Henry Wilhelm, against the defendant, debt, interest and costs. But as the Court could not from the bill and answer, without evidence, settle the conflicting claims of the parties and decree relief to the complainant, by

the allowance of any distinct amount as due him, the auditor by the decree was authorized and directed to state the account between the parties, upon testimony to be produced before him, and make his report thereon, subject to the ratification or rejection by the Court. Upon being ratified, such ratification is a decretal order equivalent to a final decree. 2 *Bland*, 264; 1 *H. & J.*, 743; 12 *G. & J.*, 323. After this decree, the matter open for the future action of the Court was the report of the auditor, the decree having settled the complainant's right to an account of the partnership. "The language of the decree when its meaning and intention are the subject of investigation, must be construed in reference to the issue which is put forward by the prayer for relief, and the other pleadings. From them it will be shown what the Court meant to decide, where from the language of the decree itself there is doubt on this point." 3 *Wallace*, 704.

If the Court, upon the bill and answer, had sustained the defence, the bill would have been dismissed, but having decreed that the account should be taken the defence was overruled, the prayer of the bill granted, and the complainant entitled to an account, reserving however the right to review and correct, if necessary, the report of the auditor, upon any question pertinent thereto, and of course not inconsistent with the issues adjudicated by the decree. Whatever indebtedness that account showed, upon the final disposition of the report, the complainant was entitled to by virtue of the decree. The question submitted under the pleadings having been adjudicated in favor of the complainant, was no longer an open one, except by petition for the review of the decree before its enrolment, or by bill of review, or by appeal, after the enrolment. *Bolgiano vs. Cooke*, 19 *Md.*, 375; *Alex. Chan. Prac.*, 177. It would be a very loose practice to permit parties at their pleasure to dispute questions which have been settled by the Court. "The decree assumed the liability of the defendant to account, hence that question cannot be agitated on exceptions to the report." *Alex. Chan. Prac.*, 309. Such we understand to be

the effect of the decree of 6th of September, 1849. The defendant acquiesced in this decree, filed a petition on the 3d of December, 1849, asking to have the testimony of the complainant taken, which was granted. The parties proceeded to take testimony before the auditor, who submitted his report on the 14th of November, 1868, finding the defendant was indebted to the complainant, either in the sum of $98.29, or $1,982.29, as it might be determined the partnership between the parties terminated on the 13th of March, 1841, as claimed by the defendant, or on the 28th of March, 1841, as insisted upon by the complainant, but in either alternative of the report, that the defendant was indebted to the complainant. No exceptions were filed by the defendant to the report of the auditor, which had found him thus indebted.

Conceding that the decree of the 6th of September, 1849, directing the auditor to take the account between the parties, did reserve all rights under the original defence to be determined after the auditor had made his report, when that report was made, and no objections were made thereto by the defendant, that decree by the waiver and acquiescence of the defendant operated to conclude him. This report of the auditor, unexcepted to, if it was an available and effective act, under the authority of the decree of the Court, must be taken as admitted evidence of the indebtedness of the defendant to the complainant.

Under this decree, and the report of the auditor in pursuance thereof, the complainant was entitled to a decretal order ratifying the report allowing to the complainant the sum found due by the defendant, to wit, $1,982.29, with interest from the 28th of March, 1841.

Exceptions having been filed by the complainant to the auditor's report, not allowing to him this sum, upon the hypothesis that the partnership was dissolved on the 13th of March, 1841, from a careful examination of the testimony, without going into the particulars here, we think the decided preponderance shows that the dissolution took place on or about

the 28th of March, 1841, and therefore the report based upon that day is the proper one to be finally ratified and confirmed. But assuming that the decree and the auditor's report in pursuance thereof, unexcepted to by the defendant, did not conclude the defendant, and that notwithstanding his waiver and acquiescence, he was still entitled to set up his original defence of limitation, the circumstances of this case do not show such *laches* on the part of the complainant, as ought in a Court of Equity to deprive him of his right of recovery.

There has been much conflict, not only in Courts of Common Law but in the Courts of Equity, where they have concurrent jurisdiction, and where the Statute of Limitations strictly applies in both Courts. Also, in cases where the remedy is alone to be sought in a Court of Equity, there has been a good deal of difficulty in applying the policy of the Statute. This Statute, in all cases of concurrent jurisdiction, at law and in equity, is equally obligatory in each Court. In such case, Courts of Equity do not act so much in analogy to the Statute as in obedience to it. They apply the Statute as it would have been applied at law. *Dugan vs. Gittings*, 3 *Gill*, 161; *Hertle and Wife vs. Schwartze & McDonald*, 3 *Md.*, 383; *Teackle vs. Gibson*, 8 *Md.*, 87; *Knight and Wife vs. Brawner*, 14 *Md.*, 7.

Where the jurisdiction is not so concurrent, but existing alone in Courts of Equity, the Statute is applied by analogy, and whether the defendant is entitled to have it so applied, depends upon the circumstances of the case, and whether a party has been guilty of *laches* in the pursuit of his rights. It is the general rule in both Courts, but in the Court of Equity, subject to the exception, when it would be against conscience to enforce it.

In *Glenn, Adm'r, vs. Hebb*, 12 *G. & J.*, 273, the Court say: "the partnership is stated in the bill and is confessed by the answer, and in such case the general rule is that an account is, of course, unless the party has slept upon his rights. It is objected that lapse of time bars an account—we

do not believe that such a defence would be legitimately made under the circumstances—we are therefore of opinion that the case should have been sent to the auditor, that an account should be taken of the co-partnership transactions." The same view was taken by the Court in another stage of the same case, 17 *Md.*, 282. In *Hanson and Wife vs. Worthington*, 12 *Md.*, 418, the same doctrine was held: "what will constitute such a lapse of time and *laches* as will bar the right of parties to recover on a claim purely equitable, all the authorities say, must depend upon the particular facts and circumstances of each case."

"Under peculiar circumstances, however, excusing or justifying the delay, Courts of Equity will not refuse their aid in furtherance of the rights of the party; since, in such cases there is no pretence to insist upon *laches* or negligence as a ground for dismissal of the suit." 1 *Story's Equity Jurisprudence*, *section* 529, refers to *Lopdell vs. Creagh*, 1 *Bligh.*, (*N. S.*,) 255.

Although limitation may be relied upon as a general rule, it is subject to exception; and whilst a Court of Chancery respects the general rule, it must, in the exercise of its discretion, regard the peculiar circumstances of every case. *Mitford's Eq. Plead.*, 318, and references. There is no fixed rule as to *laches* and lapse of time. *Farnam vs. Brooks*, 9 *Pickering*, 242.

"But as pleas of the Statute are admitted in Courts of Equity by analogy only, it follows that where the circumstances of a case are such as to make it against conscience to apply the rule founded upon analogy, the Court will not enforce it." *Collyer on Partnership*, *sec.* 375, referring to *Sterndale vs. Hankinson*, in 1 *Simons*, 398, where Sir ANTHONY HART says, "the Statute does not bar the debt, but the remedy only. Pleas of the Statute are admitted in Courts of Equity by analogy only, and where the circumstances of the case are such as to make it against conscience to apply the rule founded upon this analogy, the Court will not enforce it."

Whether the accounts of partnership, partaking, somewhat, of the nature of trusts, *inter se*, are strictly within the provisions of the Statute of Limitations, or within the exception, as to such accounts as concern the trade between merchant and merchant, and whether it applies to partnership accounts during the existence of the partnership, or after its dissolution, in the absence of any final settlement of the concerns of the partnership, and ascertainment of the respective and individual rights of each partner, are questions about which the authorities are in conflict.

The only remedy at the common law for the final adjustment of partnership transactions was the action of account, which was found to be utterly impracticable, even when the subject matter of partnership, from the character of the pursuits of the times, had a much narrower range; and much more so after the subsequent extension of commercial operations, with the multiplied agencies of corporative and other mercantile associations, had extended the affairs of human life.

Besides this difficulty, " the death of either partner put an end, at the common law, to any means of enforcing this remedy by account; for, it being founded in privity between the parties, no suit lay by, or against the personal representative of the deceased partner, to compel an account. There has been a struggle in cases, where one partner has been compelled to advance or pay money on the partnership account out of his own private funds to give him a remedy at law for a contribution from the other partners." 1 *Story's Equity Jurisprudence,* secs. 663, 664.

" At one time the Court would not entertain a suit in relation to partnership transactions, except upon a bill to wind up the partnership." *Richardson vs. Hastings,* 7 *Beav.,* 307; 1 *Story's Equity Jur.,* sec. 671.

There can be no question that much of the confusion in the authorities has grown out of the peculiar character of the dealings and relations of partners in trade, and whether their

accounts are within the Statute or within the exceptions thereto.

The case of *Barber vs. Barber,* 18 *Vesey,* 285, where the bill was dismissed by Sir WILLAM GRANT, the Master of the Rolls, under the plea of limitations, was a suit between partners, and the authority of that case was disavowed by the House of Lords, in *Robinson vs. Alexander,* 8 *Bligh,* 372, and after a careful examination, the defense of limitation was disallowed.

*Child vs. Frederick,* 1 *Peere Williams,* 266 ; *Hollingshead's Case, Ibid,* 743, are not in conflict with the views we entertain.

The Master of the Rolls, in *Hercy vs. Dinwoody,* 2 *Vesey,* 87, and also to be found in 4 *Brown, Chan. Cases,* 258, in his review of the authorities, says there is no established rule, and every case must depend upon its own circumstances.

CHANCELLOR KENT, in *Coster vs. Murray,* 5 *Johns. Chan. R.,* 522, reviewing the authorities in regard to the exception in the Statute of merchants' accounts, disposes of that case upon other grounds, without expressing any decided opinion on the question, because the case did not require it, as it was not a case of mutual accounts, and not within the exception. His opinion, although not an authority in this case, is referred to as entitled to very high respect.

The defence of limitation relied upon in this case is not *strictissimi juris,* and governed absolutely by the Statute, because the remedy here sought can be only had in a Court of Equity, (*Riarl vs. Wilhelm,* 3 *Gill,* 356,) and the Statute can only operate by analogy. The defendant, under the circumstances of this case, should not be permitted to claim the benefit of the Statute, because there has not been that *laches* on the part of the complainant as to deprive him of his remedy in this Court. The partnership having been dissolved in March, 1841, and suit at law brought before limitations could apply, verdict recovered and judgment thereon, and that judgment reversed in December, 1845, by the Court

of Appeals, because the complainant had no remedy at law, and this bill filed in November, 1848, (see *Mitchell vs. Mitchell*, 4 *Md.*, 377,) we think the complainant has not slept upon his rights, but has made diligent and reasonable efforts to recover them.

In my judgment, the complainant is entitled to a reversal of the decree below, of the 25th of February, 1849, and to an order for the final ratification of the auditor's report, allowing to the complainant the sum of $1,982.29, with interest from the 28th of March, 1841, by virtue of the decree in the cause of the 6th of September, 1849.

Differing with a majority of the Court upon the important questions involved, I have deemed it my duty to file this dissenting opinion.