(Decided 12th March, 1875.)

---

Thomas J. McKaig and William W. McKaig, Trustees of Robert S. McKaig *vs.* Hopewell Hebb and Jacob Brengle, Executors of Andrew J. Boose, and others.

*Practice in the Court of Appeals—Art. 5, sec. 26, of the Code—*
*Incompetent witness— When an Account of Partnership affairs*
*should not be ordered—Statute of Limitations a bar to a Bill*
*for an Account of Partnership affairs.*

Where a bill of complaint and accompanying documents are lost, and in the subsequent proceedings in the cause a petition and exhibit of the complainants are received by the Court in lieu of the lost papers, and the respondents answer the same, without making any objection to their sufficiency, they are precluded under sec 26, of Art. 5 of the Code, from making such objection in the Court of Appeals.

McKaig *vs.* Hebb and Brengle, Ex'rs, *et al.*

In a proceeding to obtain an account of partnership affairs, all the partners are necessary parties, and a partner though not a party of record, cannot testify in reference to the partnership transactions, his co-partner being dead and his executors being parties to the cause.

Although it is the general rule, where a partnership is alleged and admitted, to order an account of the partnership affairs, as a matter of course, unless the right of the complainant to relief is barred by the lapse of time, such account should not be ordered where it manifestly appears from the proof, that the party asking the interposition of the Court has no real cause of complaint, and that no good purpose or end can be accomplished by directing an account to be taken.

The Statute of Limitations is a bar to a bill in Equity for an account of partnership affairs, more than eight years having elapsed between the dissolution of the partnership and the filing of the bill.

APPEAL from the Circuit Court for Allegany County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, BRENT and MILLER, J.

*Thomas J. McKaig* and *A. Beall McKaig,* for the appellants.

*R. Chew Jones,* for Hebb and Brengle, executors.
*J. H. Gordon,* for Everett and Dilley.

BARTOL, C. J., delivered the opinion of the Court.

On the 12th day of April, 1854, Robert S. McKaig and Andrew J. Boose entered into a co-partnership, in the mercantile business, which continued about six months, and was dissolved on the 28th day of October, 1854. On that day R. S. KcKaig executed a deed of trust to the appellants, by which he conveyed to them all his property; including his interest in the co-partnership pro-

perty, goods and assets; in trust to sell and dispose of the same for the payment of his debts; and the residue of the trust fund, if any remain after paying the debts, to be paid to R. S. McKaig, the grantor.

It appears that before the co-partnership was formed R. S. McKaig carried on business in the same place, and A. J. Boose was his clerk. While the partnership continued Boose was the active member of the firm, attended personally to the business and kept the books; and for his services was to receive half the profits. When the dissolution took place, Boose purchased the goods remaining on hand, and continued to carry on business upon his own account. The books of the firm remained in his possession. Among the debts due the firm at the time of the dissolution, was one from Charles Perry, being balance on account. To recover this claim suit was brought, and on the 10th of April, 1860, a judgment was recovered for $1031.57 with interest from Feb. 1st, 1855, and costs, which was assigned by Boose to John Everett and entered for his use. The judgment was charged by Boose to himself, in his individual account with the firm. *Fi. fa.* was issued upon the judgment to October Term, 1860, and was renewed to January Term, 1863.

On the 21st *day of February*, 1863, a bill was filed by the complainants, against Boose, Everett and McCullough the sheriff; for the purpose of obtaining an injunction to prevent the defendants from proceeding to collect the judgment; and to obtain an account of the partnership. The injunction was issued, and appears in the record; but the original bill of complaint and the four exhibits filed therewith, together with the injunction bond, having been taken out of the clerk's office by Boose's solicitor, were by him handed to his client, who was allowed to take them with him for examination, and they were lost.

The injunction remaining in force, Everett made several ineffectual efforts by petitions for that purpose, to have the lost papers restored, or their place supplied.

In March, 1867, Boose died and letters testamentary upon his estate were granted to the appellees Hebb and Brengle. In May, 1868, Everett again filed his petition, alleging that the lost papers had not been supplied by the complainants, as required by the previous order of the Court, and praying that the bill should be dismissed and the injunction dissolved. On the 4th day of June, 1868, an order was passed directing that the injunction be dissolved, after the 1st day of July then next, unless the complainants before that day, promise to revive the suit and to supply the papers lost. The complainants on the 30th day of June, 1868, filed their answer to the petition, setting out at length their allegations and charges against Boose with respect to the affairs of the former partnership, stating the grounds upon which they ask for an account of the same; denying the right of Boose to assign the judgment, and claiming that it belongs to the partnership. On the same day, a petition was filed by the complainants, referring to their answer as a part thereof, praying for *subpœnas* against the executors of Boose, requiring them to answer the several matters set forth in the petition and the answer filed therewith, and praying that an account be taken of the partnership.

Whereupon on the same day an order was passed directing *subpœnas* to be issued as prayed.

Answers were filed by the executors, and by John Everett; a commission to take testimony was issued by consent, and returned; and the cause being heard upon the proceedings and proofs, the Circuit Court decreed that the injunction be dissolved, and the bill of complaint and all the proceedings thereon be dismissed.

From this decree the present appeal has been taken.

We agree with what was said by the Judge of the Circuit Court, with respect to the irregular and defective manner in which the appellants have complied with the order, requiring them to supply the lost papers. Their

answer and petition filed on the 30th of June, 1868, do not profess to state the contents or averments of the original bill; nor are they verified by oath ; and no order of Court was passed accepting and allowing them to stand in the place of the lost bill and exhibits, as required by the rules of practice in such cases. It appearing however that the petition and exhibit filed on the 30th of June, were actually received by the Circuit Court in lieu of the lost papers, and the respondents having answered the same, without making any objection to their sufficiency; we think they are precluded from making such objection in this Court. By the Code, Art. 5, sec. 26, it is provided that no objection to the sufficiency of the averments of the bill or petition, shall be made in the Court of Appeals, unless it appear by the record that such objection has been made, by exceptions filed in the Court, from which the appeal is taken.

We think this section applies to the present case, and the objection of the appellees to the regularity and sufficiency of the petition must be overruled.

The first question presented by the record is the competency of the witness, R. S. McKaig; he was examined for the complainants, and exceptions to his testimony and his competency were filed.

It is well settled that in a proceeding to obtain an account of a partnership, all the partners are necessary parties.

Before a decree could be passed in this case, it would be necessary to make R. S. McKaig, the surviving partner a party to the proceeding.

Treating him as a party, it is very clear that he is an incompetent witness to testify in reference to the partnership transactions, Boose, his co-partner, being dead and his executors being parties to the cause. In disposing of the case, the testimony of R. S. McKaig, must therefore be excluded from our consideration.

It appears from the books of the partnership, which are in evidence, that the business carried on by the firm, though not very extensive was prosperous.

The merchandise account amounted in the aggregate to $11,199.60. The expense account to $578.77, and the amount charged to profit and loss to $211.33.

The stock of goods on hand when the firm was dissolved was appraised at $1166.01. This was reduced by sales made after the appraisement; a portion amounting to $384.34, was delivered to Young and Carson, creditors of the firm, and the balance amounting to $600, was purchased by Boose, and charged to himself in his individual account with the firm. That account shows that on the 28th of October, 1854, the day of the dissolution, the firm was in his debt $735.47, the credits being $972.06, and the debits $236.59. The subsequent entries crediting the amounts which he paid to the creditors, the vouchers and receipts for which have been produced by the executors, and charging him with the goods on hand, sums collected by him, and the claim against Charles Perry, leaves him a creditor to the amount of $297.40.

The individual account of R. S. McKaig, shows that on the 28th of October, 1854, he was debtor to the firm $1985.72. On the 16th of November following, he is credited with $1317.32, being the appraised value of the stock of goods put into the concern by him in April, 1854. The subsequent entries in the account increase his debt to the firm to $2428.95. The debits bring $9897.14, and the credits $7468.19.

It is alleged by the appellants, that this account is erroneous, and they charge that Boose fraudulently and without authority, entered in the books, as debits in the account of *R. S. McKaig,* the accounts due from the debtors of the firm, which he had failed to collect. In our judgment this charge is not sustained by the proof. It appears that the store was situated near the canal, and the greater part

of the business of the house was with the boatmen, who were the principal customers. The proof shows that R. S. McKaig, was extensively engaged on his own account, in the boating business, owning seven canal boats, with a large number of horses and mules, and having many persons in his employ who were customers at the store. Their accounts were taken from the books, and collected by R. S. McKaig, this is proved by John B. Hays, the clerk, who testifies that such was the regular course of proceedings. The books show many such accounts charged to R. S. McKaig, in the months of July, August, September and October, 1854. But it is alleged that a large number of the boatmen's accounts have been charged on the books to R. S. McKaig, without his authority, knowledge or consent, and a list of these, has been produced by R. S. McKaig, and filed in the cause.

This list is referred to, not as evidence, but for convenience as it corresponds with what appears upon the books. By reference to these, we find that a number of the accounts named in the list, were debited to R. S. McKaig, some time before the dissolution took place, we have counted *eight* of them that were regularly entered on the books, on the 23rd and 24th of October, amounting to $779.65. Twenty-four were so entered on the 28th day of October, the day on which the assignment was made to the trustees, these amount to $1818.71, and on the 16th November, 1854, six more were so entered, amounting to $510.23. It is evident from the face of the books that all these entries were regularly made, with the knowledge and sanction of R. S. McKaig. The same may be said of those entered on the 20th of February, 1855, amounting to $262.75. The accounts we have enumerated amount in the aggregate to $3371.34. Subsequently, there were thirteen other accounts of the same kind charged, amounting to $1411.80, this entry is without any date.

With respect to the entries made on the 28th day of October, and before that time, there can be no question as

to the knowledge and sanction of R. S. McKaig. And we think there is as little doubt with regard to the subsequent entries. The witness *Hays* testifies, that after the dissolution, R. S. McKaig came with the approval of Wm. W. McKaig, one of the trustees, and of *Boose*, and took from the books, the accounts of the boatmen. *Henry Korns, John Boward, Jesse Korns, James Morgan, A. Ritter, John Oliver, Solomon J. Fague,* and *John Lingo,* who were boatmen, were called as witnesses, and all testified that their accounts with McKaig & Boose, were paid by them to R. S. McKaig. Of these the three first named, are among those found in the last named entry on the books. We are satisfied from a careful examination of the evidence, that the account of R. S. McKaig with the firm is correct, as stated upon the books. The evidence shows that the partners at the time of the dissolution of the firm, appropriated to themselves the assets, R. S. McKaig receiving the larger part of them, and proceeded to compromise with their creditors. The outstanding debts amounted to about $4000. Many of these were compromised and settled by paying $33\frac{1}{3}$ *per cent.* This appears by the vouchers and receipts of Boose, who effected the settlement, and paid the moneys, and entered the amounts so paid, to his credit in his account with the firm. There are no receipts or vouchers produced showing that any part of these debts was paid by R. S. McKaig.

We think the facts and circumstances to which we have adverted, justify the conclusion that the parties at the time of the dissolution had so arranged their business, as to render any further accounting between them unnecessary, and that they did not contemplate any further account of the partnership affairs, and this conclusion is strengthened when we consider that more than eight years elapsed after the dissolution, before the bill was filed.

It is no doubt the general rule, when a partnership is alleged and admitted, to order an account as a matter of

course, unless the right of the complainant to relief is barred by lapse of time. But where it manifestly appears from the proof, that the party asking the interposition of the Court has no real cause of complaint, and that no good purpose or end can be accomplished by directing an account to be taken, it ought not to be ordered.

In this case we are clearly of opinion, upon the merits, as disclosed · by the evidence, that the Circuit Court was right in refusing to order an account to be taken of the partnership affairs, and this without reference to the defence under the Statute of Limitations which has been relied on by the appellees in their answers. The Circuit Court decided that this defence was a complete bar to the right to an account in this case, and in this opinion we entirely concur. It was decided in *Wilhelm vs. Caylor*, *Ex'r*, 32 *Md.*, 151, that the Statute of Limitations is a bar to a bill in equity for an account, and the authorities cited in the opinion of the Court in that case, demonstrate that the defence under the Statute was properly sustained in the present case. The complainants have endeavored to remove the bar of the Statute by proving a contract on the part of *Boose* to settle the partnership affairs. In this we think they have failed, the testimony of R. S. McKaig being out of the case, there is no satisfactory proof of such an undertaking on the part of Boose. When the dissolution took place, there appears to have remained nothing to be settled, except the debts of the firm, which as we have before stated were compromised and paid by Boose in a short time afterwards.

With respect to the injunction, we entertain no doubt of the right of Boose to assign the judgment. It was entered to his debit in the books of the firm of which he was a creditor to a considerable amount; and in our opinion the circumstances attending the dissolution of the co-partnership, and the transactions between the parties, warrant the conclusion that there was an agreement and under-

standing between them that Boose should be entitled to the claim against Perry, as a part of his share of the assets.

For the reasons stated we think the decree of the Circuit Court was correct, and ought to be affirmed.

*Decree affirmed.*

(Decided 12th March, 1875.)